(November 11, 1913.)

## INDIAN COVE IRRIGATION DISTRICT, a Public Corporation, and GEORGE W. SMITH, Appellants, v. MARION H. PRIDEAUX, Respondent.

[136 Pac. 618.]

IRRIGATION DISTRICT—LANDS INCLUDED IN—GOVERNMENT LAND—ENTRYMEN—HOLDER OF RECEIPT—CONSTRUCTION OF STATUTE.

1. Under the provisions of the irrigation district laws of this state (Rev. Codes, sec. 2372 et seq.), agricultural lands that have been entered under any of the land laws of Congress may be included in an irrigation district.

2. A homestead or desert land entry is the initial step taken in the United States land office by the claimant toward acquiring ownership under the homestead or desert land laws, and precedes the performance on the part of the claimant of the conditions required by the law.

3. *Held*, that it was the intention of the legislature in enacting the irrigation district law to include the receipt of a register of the United States land office as evidence of title sufficient to serve the

purpose of the act so far as title is concerned, and to authorize the inclusion of the lands so entered in an irrigation district, and authorize the apportionment of benefits to such land.

4. The inclusion of such lands within an irrigation district and the apportionment of benefits thereto cannot interfere with the disposal of such lands by the government.

APPEAL from the District Court of the Third Judicial District for Owyhee County. Hon. Chas. P. McCarthy, Judge.

Action for approval and confirmation by the district court of the proceedings of the board of county commissioners declaring the legality of the organization of the Indian Cove Irrigation District and of the issuance and sale of certain bonds. Judgment affirming such proceedings but excluding certain lands from said district. Judgment reversed as to the exclusion of such lands.

Richards & Haga and McKeen F. Morrow, for Appellant, Indian Cove Irrigation District.

The decision of the trial court is directly contrary to the decision of this court in *Gem Irr. Dist. v. Johnson,* 18 Ida. 386, 109 Pac. 845.

The word "entryman," as used in the irrigation district law, is used in the sense it is used in common parlance, and the technical definition of the term is in fact the same as it is commonly understood. In Webster's Dictionary the word is defined as "one who goes upon public land with intent to secure an allotment under the homestead, mining or other law." (*McCune v. Essig,* 118 Fed. 273, 276.)

Irrigation districts are public corporations, though not strictly municipal in the sense of exercising governmental functions other than those connected with raising revenue to defray the expense of constructing and operating the irrigation system. (*Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369; *Pioneer Irr. Dist. v. Walker,* 20 Ida. 605, 119 Pac. 304; *In re Bonds of Madera Irr. Dist.,* 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 675.)

One of the essential attributes of a public corporation as distinguished from the private corporation is that membership in the former is involuntary and based upon some geographical or similar classification, while membership in the latter is based upon consent. (Morawetz, Private Corp., 2d ed., sec. 3; Thompson on Corp., sec. 21; *McKin v. Odon,* 3 Bland (Md.), 407; *Washington Home v. Chicago,* 157 Ill. 414, 41 N. E. 897, 29 L. R. A. 798.)

The discretion vested in the board of county commissioners as to what lands shall be included in an irrigation district is not subject to review by the courts, and clearly not when the evidence is conclusive and both the board of county commissioners and the court find that the lands included in the district will be benefited thereby, and that they are susceptible "of one mode of irrigation from a common source and by the same system of works." (*In re Bonds of Madera Irr. Dist.,* supra; *Herring v. Modesto Irr. Dist.,* 95 Fed. 705; 3 Kinney, Irrigation and Water Rights, p. 2547; *Cullen v. Glendora Water Co.,* 113 Cal. 503, 39 Pac. 769, 45 Pac. 822, 1047; *Board of Directors of Modesto Irr. Dist. v. Tregea,* 88 Cal. 334, 26 Pac. 237; 40 Cyc. 819, 820; *State v. Several Parcels of Land,* 80 Neb. 424, 114 N. W. 283; *Andrews v. Lillian Irr. Dist.,* 66 Neb. 458, 92 N. W. 612, 97 N. W. 336.)

As soon as final certificate issues, and possibly as soon as the entryman has become entitled to final certificate, he has the whole beneficial interest in the land if it may be taxed, regardless of the fact that the government may, for good cause, eventually refuse to issue patent. (*Carroll v. Safford,* 3 How. (U. S.) 441, 11 L. ed. 671.)

"Under the statutes of this territory in force in 1881, possessory claims are taxable." (*Cramer v. Walker,* 23 Ida. 495, 130 Pac. 1002.)

The right of the territory of Idaho to tax possessory claims, notwithstanding the restriction in the organic act of the territory against taxing property of the United States, was upheld in *Quivey v. Lawrence,* 1 Ida. 313, and *People v. Owyhee Mining Co.,* 1 Ida. 409.

In California there has never been any statutory exemption of such possessory rights, and the courts have uniformly upheld their taxation regardless of whether the possessory interest involved consisted of mining claims, town lots, or preemption or other agricultural entries under the public land laws. (*State v. Moore,* 12 Cal. 56, 14 Morr. Min. Rep. 110; *People ex rel. McCullough v. Shearer,* 30 Cal. 645. See, also, *Elder v. Wood,* 208 U. S. 226, 28 Sup. Ct. 263, 52 L. ed. 464; *Maish v. Pima Co.* (Ariz.), 37 Pac. 370; *Maish v. Arizona,* 164 U. S. 599, 17 Sup. Ct. 193, 41 L. ed. 567; *Baltimore Ship Bldg. etc. Co. v. Baltimore,* 195 U. S. 375, 25 Sup. Ct. 50, 49 L. ed. 242; *Forbes v. Gracey,* 94 U. S. 762, 24 L. ed. 313, 14 Morr. Min. Rep. 183; *Central Pac. R. R. Co. v. Nevada,* 162 U. S. 512, 525, 16 Sup. Ct. 885, 40 L. ed. 1057, 1061; *People v. Black Diamond Co.,* 37 Cal. 54, 14 Morr. Min. Rep. 162; *Hale & Norcross Co. v. Storey Co.,* 1 Nev. 104, 14 Morr. Min. Rep. 115; *People v. Frisbie,* 31 Cal. 146; *People v. Cohen,* 31 Cal. 210; *Bakersfield & Fresno Oil Co. v. Kern Co.,* 144 Cal. 152, 77 Pac. 892; *Gwynne v. Niswanger,* 15 Ohio, 367; *Ross v. Board of Supervisors,* 12 Wis. 26; *People v. Donnelly,* 58 Cal. 144; *Cobban v. Meagher,* 42 Mont. 399, 113 Pac. 290; *Topeka Com. Security Co. v. McPherson* (Okl.), 52 Pac. 395.)

The California code expressly provides for the collection of taxes in cases where the individual only has a right to the possession, like that of a desert or homestead entryman, by the seizure and sale of the personalty and improvements of the entryman. (Pol. Code, secs. 3617, 3820, 3821; *Bakersfield etc. Oil Co. v. Kern County,* 144 Cal. 152, 77 Pac. 892; *San Diego v. Linda Vista Irr. Dist.,* 108 Cal. 189, 41 Pac. 291, 35 L. R. A. 33.)

F. W. Ebbert, for Appellant G. W. Smith.

Whether the lands having the evidence of title required by the statute are "susceptible of one mode of irrigation from a common source and by the same system of works" is the one question submitted for determination to the board of county commissioners by the statute. It is wholly a question of fact and not of law, and being so, the determination of the fact is

final and conclusive, especially as it must be ratified by a vote of the electors in the proposed district before the district can be organized. (40 Cyc. 820; *O. S. L. R. Co. v. Pioneer Irr. Dist.,* 95 Fed. 705; *Central Irr. Dist. v. De Lappe,* 79 Cal. 351, 21 Pac. 825; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369.)

Thompson & Buckner, *Amici Curiae.*

An irrigation district is a governmental agency of the state created for an express purpose, to wit: To reclaim arid lands. (*Lincoln & Dawson Co. Irr. Dist. v. McNeill,* 60 Neb. 613, 83 N. W. 847; *Board v. Collins,* 46 Neb. 411, 64 N. W. 1086; Wiel on Water Rights, sec. 1356.)

The irrigation district is a *quasi*-municipal corporation organized for the specific purpose of providing ways and means of irrigating lands within the district. (*Colburn v. Wilson,* 23 Ida. 337, 130 Pac. 381; *Pioneer Irr. Dist. v. Walker,* 20 Ida. 605, 119 Pac. 304; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369.)

Irrigation districts organized under the laws of this state are involuntary corporations. (*Rood v. Claypool Drainage & Levee Dists.,* 120 Fed. 207, 56 C. C. A. 527.)

D. A. Dunning and R. C. Taylor, for Respondent.

The object of the proceeding is to confirm the organization of the district and all other matters affecting the validity of the bonds, so that it may be finally and conclusively determined, which neither he nor his successors in interest can question, whether such bonds are legal and valid or not. (*Board of Directors of Modesto Irr. Dist. v. Trega,* 88 Cal. 334, 26 Pac. 237.)

Respondent cannot subsequently raise the question here involved. (*People v. Selma Irr. Dist.,* 98 Cal. 206, 32 Pac. 1047; *Quint v. Hoffman,* 103 Cal. 506, 37 Pac. 514, 777.)

Such an attack cannot be made in an action to recover possession of land sold for nonpayment of irrigation taxes or

assessment.   (*Burdin v. Washington etc. Assn.*, 41 Wash. 395, 83 Pac. 773.)

The sale of bonds cannot be enjoined by the land owner who did not appear at the confirmation proceedings.   (*Crall v. Poso Irr. Dist.*, 87 Cal. 140, 26 Pac. 797.)

Even the state itself could not thereafter question the validity of the organization of such district if *quo warranto* proceedings were brought.   (*People v. Linda Vista Irr. Dist.*, 128 Cal. 477, 6 Pac. 86; *Progressive Irr. Dist. v. Anderson*, 19 Ida. 504, 114 Pac. 16.)

If the validity of the bonds is confirmed in this proceeding, respondent cannot thereafter raise any question affecting the legality or validity of the bonds.   (*Nampa-Meridian Irr. Dist. v. Brose*, 11 Ida. 474, 83 Pac. 499.)

The equitable title to be subject to taxation must be perfect and complete, without anything more to be paid or any further act to be done before the entryman is entitled to receive his patent.   (37 Cyc. 868.)

The land cannot be taxed.   (*Quivey v. Lawrence*, 1 Ida. 313; *People v. Owyhee Mining Co.*, 1 Ida. 409; *Nevada Nat. Bank v. Poso Irr. Dist.*, 140 Cal. 344, 72 Pac. 1056.)

The right of a homestead or desert entryman is in no way analogous to that of the locator of a mineral claim.   (*Shiver v. United States*, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. ed. 231.)

The homestead entryman can transfer only after title has been earned.   He has no exclusive right of possession until patent issues.   Congress may dispose of the land in any other manner prior to such time.   (*Wagstaff v. Collins*, 97 Fed. 3, 38 C. C. A. 19; *Norton v. Evans*, 82 Fed. 804, 27 C. C. A. 168.)

The title of the government, the land itself, cannot be affected, nor will any title that may hereafter be derived from the government be affected.   (*People ex rel. McCullough v. Shearer*, 30 Cal. 645; *Nevada National Bank v. Poso Irr. Dist., supra.*)

The court held in the above case that the land of the intervenor, which was public land of the United States at the time of the formation of the district, was no part of the district.

.Sec. 2372, Rev. Codes, says, "holders of title or evidence of title to lands," and further by the last sentence in the proviso clearly indicates that except for "the purposes of said petition," the title to the lands must be complete.

This section, read with secs. 2399 and 2405, precludes the idea of assessing any property other than land, and makes it clear that only patented land can be included. So far as *Gem Irr. Dist. v. Johnson*, 18 Ida. 386, 109 Pac. 845, is concerned, there is nothing in that decision holding otherwise.

SULLIVAN, J.—This is an appeal by the Indian Cove Irrigation District in a proceeding brought by said district for the examination, approval and confirmation of the proceedings of the board of county commissioners leading up to the organization of said district and of the proceedings of the district authorizing the issuance and sale of a $400,000 issue of bonds.

The trial court found that all of the proceedings of the board of county commissioners and of the district were legal and valid in the organization of the district and other matters, except in so far as the board of county commissioners had included in said irrigation district the lands of the respondent Prideaux. Prideaux held under the desert act of Congress 80 acres, and as a homestead under the homestead laws of Congress 160 acres, to neither of which entries had he earned title, or made final proof, under the land laws of Congress. The trial court excluded said lands of the respondent from said irrigation district and directed that the boundaries of the district be changed accordingly. In all other respects the proceedings of the board of county commissioners and of said irrigation district were approved and confirmed.

The irrigation district appeals from that portion of the decree excluding respondent's land from said district, and appellant George W. Smith, a land owner in said district, appeals from the entire decree.

The facts necessary to a decision of this case are not in dispute, and are substantially as follows:

On March 20, 1912, a petition for the organization of the Indian Cove Irrigation District was filed with the board of

county commissioners of Owyhee county, Idaho, and on May 23, 1912, after due notice, and after a full hearing, said board made an order describing the lands they had determined to include in said district and providing for its organization, in case the electors of the proposed district voted in favor of such organization. The lands are fully described in said order. In pursuance of this order, an election was held on June 29, 1912, and the vote being favorable to the organization of the district, the board of county commissioners, after a canvass of such vote, declared it duly organized.

On December 10, 1912, the district authorized the issuance of its bonds to the amount of $400,000 at a special election held for that purpose, but no apportionment of benefits has been made. The findings of the trial court are exceedingly full and cover every issue, and show a substantial compliance with the terms of the statute in the organization of the district and in the issuance of the bonds; but the court in effect held that the lands of respondent Prideaux were not, and never would be, a part of the irrigation district, and could not legally be included therein, and were not now and never would be assessable for the payment of the irrigation system, acquired by said irrigation district at great expense, or for the maintenance thereof, although both the court and the board of county commissioners found, and there is no evidence or even contention to the contrary, that the lands of respondent and all other lands included in the district will be greatly benefited by such improvements. From this portion of the court's decision the irrigation district has appealed.

This proceeding was not brought to confirm an assessment or apportionment of benefits, as neither has been made. The district has made no attempt to levy any tax on respondent's land or even on his interest therein, or to apportion any part of the costs of the irrigation system to such lands.

Five errors are assigned, and are all to the effect that the court erred in holding that said lands of respondent, by reason of their being held under homestead and desert land laws of Congress, and because final proof had not been made to the

government therefor, could not be legally included within said irrigation district.

Title 14, chap. 1, of the Civil Code of this state, beginning with sec. 2372, provides for the organization of irrigation districts. Sec. 2372 is as follows:

"Whenever fifty, or a majority, of the holders of title, or evidence of title, to lands susceptible of one mode of irrigation from a common source and by the same system of works, desire to provide for the irrigation of the same, or when for other reasons they desire to organize the proposed territory into one district, they may propose the organization of an irrigation district under this title: *Provided*, said holders of title or evidence of title shall hold such title or evidence of title to at least one-fourth part of the total area of the land in the proposed district, which will be assessable for the purposes of the district. The equalized county assessment-roll next preceding the presentation of a petition for the organization of an irrigation district shall be sufficient evidence of title for the purpose of this title, but other evidence may be received, including receipts or other evidence of the rights of entrymen on lands under any law of the United States or of this state, and such entrymen shall be competent signers of such petition, and the lands on which they have made such entries shall, for the purposes of said petition, be considered as owned by them."

That section declares who may propose or initiate the organization of a district and includes therein those who have entered the land under the laws of the United States and of the state, thereby clearly indicating that the lands of such entrymen may be included in such district although the entrymen have not, as yet, made final proof thereon; or, as is sometimes stated, have not yet earned the title from the government or state, but have initiated title, which, if prosecuted as required by law, will result in a legal title from the government or state.

This court had under consideration the provisions of said section of the statute above quoted, in the *Gem Irr. Dist. v. Johnson*, 18 Ida. 386, 109 Pac. 845, and the court said:

"The only question that is argued or presented on this appeal is whether or not the expression 'the lands in the proposed district which will be assessable for the purposes of the district' has reference to lands to which the owners or occupants hold title and lands the title to which has passed from the state or general government, or whether this relates to and is satisfied by the latter part of the proviso to the section, which says, 'but other evidence may be received, including receipts or other evidence of the rights of the entrymen on lands under any law of the United States or of this state.' We do not think there is any room for doubt as to what the legislature meant by the provisions of the last sentence of this proviso to sec. 2372. The concluding part of the sentence itself is clear and explicit. It says, 'and such entrymen [referring to the holders of the receipts from the state or the general government] shall be competent signers of such petition, and the lands on which they have made such entries shall for the purposes of said petition, be considered as owned by them.' This measures the qualifications of a signer of such petition and the conditions under which he may sign and be counted as one of the number and one whose lands will constitute the required amount to be represented by such petition. The condition is that he shall hold an entryman's receipt, either from the state or the general government, for the lands claimed by him and which he seeks to have included in the district and subject to assessment for the purposes of an irrigation district.

"It is equally clear that irrigation bonds issued against such lands would be valid and binding to the extent at least of the title, interest or claim of such entryman in and to such lands, whether acquired by him from the state or the general government."

The court in that decision clearly contemplated that land entered under the laws of Congress might be included in such district. The question was whether entrymen under the desert or homestead land laws who had not earned title or made final proof under their entries were qualified signers of the petition and as to whether land so held could be held as a

part of the required one-fourth total area of the land proposed in said district "which will be assessable for the purposes of the district." The court in effect held that.such lands could be included in an irrigation district. The word "entry" as used in the public land laws of Congress is evidently used in the sense that it means the initiatory step made in the United States land office for initiating proceedings to procure title to certain land. Webster in his dictionary defines the word "entryman" as one who enters upon public land with intent to secure an allotment under the homestead, mining or other laws.

In *McCune v. Essig,* 118 Fed. 273, the court said: "A homestead entry (which) is the initial step taken in the land office toward acquiring ownership under the homestead law, and precedes the performance on the part of the homestead claimant of the conditions of residence upon an improvement of the land."

It is contended in this case that by including such land in an irrigation district the state or district cannot in any wise interfere with the government's ownership and disposition of such land, and this court in the *Gem Irr. Dist. v. Johnson, supra,* said that: "As to what liability the bonds would impose upon such lands beyond and in excess of the interest acquired or held by the entryman is another question, and one that does not concern us in this case."

The interest acquired and held by the entryman in such land, aside from the procuring of title from the government, may, under said district irrigation act, be subjected to the provisions of said act by holding that said land is within said irrigation district, and will be benefited by the organization of the district; but any burdens imposed will not and cannot interfere with the disposal of such lands by the government. The record is conclusive upon the point that the organization of the district and the improvement proposed will benefit respondent's land. The board of county commissioners so held after a full consideration of all the facts connected therewith, and the trial court held, after a full consideration of all the facts, that all the lands included within the boundaries

of said irrigation district as fixed by said board were and are susceptible of irrigation from a common source and by the same system of works and will be benefited by irrigation from the system described in said petition, but based its decision on the ground that the respondent had not procured title to said land from the United States, and for that reason could not legally be included in said district. Whatever property rights or interest respondent may have in the lands in question are subject to the laws of the state, not in conflict with the federal laws on the same question, and it was on this theory that the court said in the *Gem Irr. Dist. v. Johnson, supra:* "It is equally clear that irrigation bonds issued against such lands would be valid and binding to the extent at least of the title, interest or claim of such entryman in and to such lands, whether acquired by him from the state or the general government." The legislature evidently recognized the fact that the arid lands of the state are practically worthless without water for irrigation and domestic purposes, and that individual owners cannot construct the works or incur the expense necessary to acquire water for their lands except in co-operation or in conjunction with others, and with that end in view have provided the organization of *quasi*-municipal corporations in order better to accomplish the development of the material resources of the state. In many cases title to arid lands cannot be acquired from the general government without water for irrigation purposes, and in none of the irrigation districts organized in this state were the lands included therein all patented at the time the district was organized. If a district must be organized so as to include only lands that have been patented, or lands on which final proof has been made by the claimants, development by irrigation districts could not be made, for it would increase the expense to the patented lands to such an extent that it would be prohibitive, and hence the legislature wisely provided for the organization of irrigation districts to include both patented lands and lands held by private parties under homestead or desert entries.

It is settled law that irrigation districts are public corporations, although not strictly municipal in the sense of

exercising governmental functions other than those connected with raising revenue to defray the expense of constructing and operating irrigation systems and the conduct of the business of the district. (*Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369; *Pioneer Irr. Dist. v. Walker,* 20 Ida. 605, 119 Pac. 304; *In re Bonds of Madera Irr. Dist.,* 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 675.)

One of the essential attributes of a public corporation as distinguished from a private corporation is that membership in the former is involuntary and based upon some geographical or similar classification, while membership in the latter is based on consent. (Morawetz on Priv. Corp., 2d ed., sec. 3; Thompson on Corp., sec. 21.)

As illustrating the fundamental basis of the law of irrigation districts, the supreme court of the United States in *Fallbrook Irr. Dist. v. Bradley, supra,* said:

"If it be essential or material for the prosperity of the community, and if the improvement be one in which all the land owners have to a certain extent a common interest, and the improvement cannot be accomplished without the concurrence of all, or nearly all, of such owners by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their joint expense. In such case, the absolute right of each individual owner of land must yield to a certain extent or be modified by corresponding rights on the part of other owners for what is declared upon the whole to be for the public benefit."

It is clear that irrigation districts as public corporations are not based upon consent of all the members and may include lands without the consent of the owner—entryman. In the *Gem Irr. Dist. v. Johnson, supra,* the court confirmed the organization of a district containing 30,000 acres of land within its boundaries, 10,000 acres of which was unsold state land, and only a few scattered governmental subdivisions of said land were patented at the time of the organization of the district and only a majority of the landholders had petitioned for the organization of the district.

It appears from the record that a full hearing was had before the board of county commissioners on the question of the organization of said district, and that respondent, claiming to be the owner of lands which the trial court excluded from the district, signed and filed with the board a written protest against the inclusion of his lands in the district. He was represented by counsel at the hearing and such protest was considered by the board and finally overruled, and the board found that respondent's land would be benefited by irrigation from the district's proposed irrigation system and by the formation of said district, and a similar finding was made by the court. It is a well-recognized fact that possessory rights to public land are frequently of great value and constitute valuable property rights. Desert entries are traded in and assigned for value in many parts of the state, and relinquishments of homesteads are readily salable where the land has become valuable. The entryman is entitled to the protection of the state and the local laws to the same extent as if he resided on patented lands. Then why may he not be taxed in proportion to the benefits received?

Under the provisions of our constitution, sec. 19, art. 21, the state is prohibited from imposing taxes upon lands on property belonging to the United States, but the law is well established that as soon as final certificate issues, he has the whole beneficial interest in the land and it may be taxed. (*Carroll v. Safford,* 3 How. (U. S.) 441, 11 L. ed. 671.)

The court held in *Cramer v. Walker,* 23 Ida. 495, 130 Pac. 1002, that under the statutes of this territory which were in force in 1881 possessory claims were taxable.

It is clearly within the power of the state to tax homestead and desert entries such as those of respondent, and the necessity for so doing in case of local improvements is very clear, but in so doing the state is prohibited from in any manner interfering with the right of the government to transfer the title to said land.

In *State v. Moore,* 12 Cal. 56, in which case the only objection to the power of the legislature to impose a tax arose from the fact that the mines involved in that case were the property

of the government and were exempt from taxation, the court said: "This fact, however, if admitted, does not, in our view, militate against the right to levy a tax upon the interest of the possessor of such claim."

In *Elder v. Wood,* 208 U. S. 226, 28 Sup. Ct. 263, 52 L. ed. 464, the court upheld the validity of a tax deed based upon the assessment of an unpatented mining claim and concluded as follows: "The state, therefore, had the power to tax this interest in the mining claim and enforce the collection of the tax by sale. The tax deed conveyed merely the right of possession and affected no interest of the United States."

There are many cases holding that rights to the possession of and qualified interests in lands are taxable notwithstanding the government's interest in the land. On a review of the authorities upon this question they show that property rights or interests of entrymen under the public land laws of the United States are within the taxing power of the state, and the fact that the government retains an interest in the same property does not interfere with such right of taxation. (See *City of San Diego v. Linda Vista Irr. Dist.,* 108 Cal. 189, 41 Pac. 291, and note to the same case in 35 L. R. A. 33.) No tax assessment or apportionment of benefits have been made by said irrigation district affecting the respondent's land, and the respondent should bide his time and invoke the aid and protection of the court if the law is actually violated and an attempt is made to collect an illegal tax. When the district comes to levy the tax or apportion the benefits, respondent may have parted with or forfeited whatever interests he may have in the lands in question, and the subsequent owner may be willing to work in harmony with the other land owners in said irrigation district for the general development of the community, and be willing to bear his just proportion of the taxes levied for such purpose.

The district court erred in excluding the respondent's land from said irrigation district.

George W. Smith, one of the plaintiffs in the case, also appealed. His appeal goes to the validity of the bond issue and assigns as error the holding of the court excluding

Prideaux's land from said district.  Is the bond issue invalid because based on a contract made within the Indian Cove Reclamation Co. for water for said district?  The record shows that at a meeting held July 29, 1912, the report of Horn, an engineer, and a form of contract with the Indian Cove Reclamation Company were submitted to the board of directors and taken under consideration.  Action thereon was deferred from time to time until August 26, 1912.  On that day the board voted to adopt the contract.  This contract was for the purchase of a certain irrigation plant for the sum of $167,138.00.  The board found that that was a reasonable amount to be paid for said plant, and on the latter date proceeded to give notice of a special bond election to determine whether or not the district should issue $400,000 worth of bonds to purchase and enlarge the system of the Indian Cove Reclamation Company.  The election was held on December 10, 1912, and the vote was favorable to the bond issue.  This question raised by appellant Smith, or substantially the same question, was raised in the courts of Oregon in the case of the *Board of Directors of Payette etc. Irr. Dist. v. Peterson,* 64 Or. 46, 128 Pac. 837.  The Oregon court held against the contention now made by Smith.

It is contended by Smith that the contract with the Indian Cove Reclamation Company was entered into before the board had received or considered the report of the state engineer.  This contention is without merit.  While it is true the state engineer's report bears date three days later than the contract and was not considered by the board until October 1, 1912, the proceedings of the board at that meeting shows that the board approved the purchase of the works described in the contract, and that the board, after having duly considered the report, ratified the contract and their former action in regard to it and proceeded to carry out such contract by calling for an election to authorize the issuance of $400,000 worth of bonds to be used for purchasing said works and enlarging the same.  The ratification of the contract was therefore complete, and it is immaterial in this case whether the board had authority to enter into the contract before re-

ceiving the state engineer's report or not. It is clear that the board of directors had authority to enter into said contract and to issue the bonds of the district in payment for the irrigation system in accordance with the terms of such contract.

The judgment of the trial court must therefore be modified and reversed so far as it excludes the lands of the defendant Prideaux from said irrigation district, and judgment entered including said land within said district. The cause is remanded for further proceedings in accordance with the views expressed in this opinion. Costs are awarded to appellants.

Ailshie, C. J., and Stewart, J., concur.