GUY SPURRIER ET AL., APPELLEES, V. MITCHELL IRRIGATION DISTRICT ET AL., APPELLANTS.

FILED FEBRUARY 21, 1930.   No. 27096.

402

*Morrow & Morrow, Wright & Wright* and *Mothersead & York,* for appellants.

*Raymond & Fitzgerald, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

DAY, J.

This action was brought to recover damages for injuries to land by seepage from several irrigation districts. In the trial court plaintiffs recovered for temporary damages, that is, for the loss of the use of the land for two certain years.

The plaintiffs' land lies within the Mitchell Irrigation District and has been irrigated under said district since its organization in 1896. The Gering and Ft. Laramie Irrigation District was organized in 1918, for the irrigation of land of higher levels than the plaintiffs' and higher than the land under the Mitchell ditch. Neither ditch crosses the land involved and no compensation has been paid the plaintiffs as a result of the construction of said irrigation works. The land in question was irrigated for years under the Mitchell ditch, without damage from seepage, and it was not until after the Gering and Ft. Laramie ditch was placed in operation that the seepage appeared. The plaintiffs allege in their petition that their land was damaged by the seepage or percolation of the water caused by the operation of the defendants, Mitchell Irrigation Dis-

trict, the Gering Irrigation District, and the Gering and Ft. Laramie Irrigation District. In fine, they contend that the percolating waters contributed by the Gering and Ft. Laramie district and the seepage and percolation of the Mitchell and the Gering district combined to cause the damage. The Gering and Ft. Laramie district and the Mitchell district irrigate lands, the drainage of which percolates through the subsoil of the plaintiffs' land. The Gering district does not irrigate any such land, but about 1900 enlarged the Mitchell Irrigation District canal to a capacity sufficient to carry its requirements for water for the irrigation of lands within its district, which district lies beyond the Mitchell Irrigation District, the subterranean drainage of which does not reach the plaintiffs' land.

The Mitchell Irrigation District, by its answer, admits most of the facts which are alleged by the plaintiffs in their petition, except that it caused the seepage. For a further defense they allege in their answer that there was a misjoinder of parties, in that there was no joint act of the several defendants, but that each was operating a single enterprise and that any damage which may have occurred was not the result of the joint act of the defendants. This defendant also urges by way of defense that the lands under the Mitchell irrigation ditch had been irrigated for many years without any seepage, and that the damage to the plaintiffs' land was caused by the irrigation of lands under the Gering and Ft. Laramie canal. For a further defense, the Mitchell district claims that, having irrigated the lands under its ditch since prior to 1898, which was more than 10 years prior to 1926, openly and notoriously, when it was a matter of knowledge that the irrigation of lands raised the water table, they acquired a right to continue to so operate the canal and distribute water for irrigation of said land, and that the plaintiffs' land would never have been damaged except for the construction and operation of the Gering and Ft. Laramie canal. They insist also that, since their works were constructed in 1896 and have been in continuous operation from that date, the

statute of limitations has run against the plaintiffs. The Gering and Ft. Laramie Irrigation District admits in its answer the organization of the irrigation district, and alleges that it does not own the irrigation works but only acts as the fiscal agent for the United States of America, for the part of the Ft. Laramie division of the North Platte project located within the state of Nebraska, which is the irrigation canal, works and improvements mentioned in the plaintiffs' petition and referred to as the Gering and Ft. Laramie canal. It alleges that it merely operates and maintains the canal laterals and irrigation works constructed by the United States under the direction and control of the secretary of the interior; that in the construction and operation of the works every reasonable precaution and care has been taken to prevent water seepage therefrom, other than by lawful diversion for the irrigation of the lands lawfully entitled to irrigation therefrom; that the seepage on the plaintiffs' land occurred prior to the time this defendant took over the operation and maintenance of the canal and irrigation works; that any damages to, or appropriation of, said land occurred prior to the operation and management of said defendant. Their position is that since they did not construct the works and do not own them, there can be no recovery against them for appropriating or damaging. And inasmuch as they have operated the works in a careful and prudent manner without negligence, there can be no recovery against them on that theory. The answer of this defendant also alleges that any damage occurring to the land or capacity of the plaintiffs by reason of seepage, percolating waters or excessive moisture was caused by the irrigation of lands within the Mitchell Irrigation District above those of plaintiffs, together with the irrigation of the plaintiffs' land by plaintiffs.

To the several answers of the defendants, the plaintiffs reply as follows: That as to the Mitchell Irrigation District, the seepage did not appear until 1925, and their cause of action accrued then, and not at the time of the construction

of the works. With reference to the answer of the Ft. Laramie district, they allege the Ft. Laramie district was organized prior to 1919 for the purpose of acquiring irrigation works or causing the same to be constructed for the improvement of lands within the district, and for said purpose they entered into a contract with the United States of America in 1920; that all the works and canals referred to were built for the benefit of the defendant district, and by reason thereof the district is liable for the acts occasioned by said improvement. This extended summary of the pleadings has been made in order that the issues involved might clearly appear.

The case was submitted to the jury by the court on the theory that the building and operation of the Mitchell district with the Ft. Laramie district, together with the breaking out and cultivation by irrigation of lands thereunder, caused the seepage of plaintiffs' land and resulted in damage or taking thereof under the Constitution of the state of Nebraska. This was done upon the theory that the irrigation districts were liable for seepage caused by the irrigation of lands by the owners thereof within their districts, and that the defendant Gering and Ft. Laramie district was liable for damage and taking, if any, caused by the building of the canal by the United States of America, before control was turned over to it.

At the close of the testimony, upon the motion of the defendant Gering Irrigation District, the trial court withdrew from the consideration of the jury the liability of the Gering Irrigation District. There was no appeal from this order and no question is presented with respect thereto. The only possible basis of liability upon which the Gering district could be held was for the seepage from its canal which ran at some distance from plaintiffs' land. The situation of the Mitchell Irrigation District, in so far as its canal was concerned, was exactly the same as that of the Gering canal, with the exception that the Mitchell Irrigation District had certain laterals running out through the land irrigated, each of which carried relatively smaller

amounts of water than the main canals. The situation of the Gering and Ft. Laramie district, in so far as the operation of its irrigation canal and laterals, is the same as the Mitchell district, except that they are located at a greater distance from the plaintiffs' land. There is no allegation of negligence in this case on account of improper construction of the works, and in the absence of negligence the irrigation district is not liable for seepage from its canals and laterals.

In *Mackay v. Breeze,* 269 Pac. (Utah) 1026, it was said: "The rule of law announced in the leading English case of *Fletcher v. Ryland,* 1 E. R. C. 235, where it is held that the defendant was under an absolute duty to keep water which he had collected in a reservoir from doing injury to others, has not generally been applied to ditches and canals. One who constructs a ditch or canal and conveys irrigation water through the same must use ordinary care in the construction, maintenance, and operation of such ditch or canal. The degree of care required to prevent the escape of water is commensurate with the damage or injury that will probably result if the water does escape. Such is the rule of law repeatedly announced in this jurisdiction and generally established in America and England when applied to ditches and canals." Numerous Utah cases, as well as cases from other jurisdictions, together with other authorities, are cited to support this view, some of which we will mention.

The owner of an irrigation ditch is not an insurer against damage by seepage as a result of the construction and maintenance of said ditch, but is only required to use reasonable skill and care in the building of his works, and the operation thereof. He is only liable for injuries resulting from negligent construction and operation. *Howell v. Big Horn Basin Colonization Co.,* 14 Wyo. 14, 1 L. R. A. n. s. 596. The foregoing view is supported by the great weight of authority. We cite only a few of the many cases from the various states wherein the rule has been applied to irrigation ditches and canals. *Longmire v. Yelm Irrigation District,* 114 Wash. 619; *Nahl v. Alta Irrigation Dis-*

*trict,* 23 Cal. App. 333; *Fleming v. Lockwood,* 36 Mont. 384, 14 L. R. A. n. s. 628; *Calvert v. Anderson,* 73 Mont. 551; *Jeffers v. Montana Power Co.,* 68 Mont. 114; *Grand River Ditch Co. v. Ruane,* 82 Colo. 333; *Anderson v. Rucker Bros.,* 107 Wash. 595. See, also, 1 Wiel, Water Rights in the Western States (3d ed.) sec. 461, p. 489. While not stating the rule in clear, concise, and controlling language, our court in *Kearney Canal & Water Supply Co. v. Akeyson,* 45 Neb. 635, examined the record to determine whether, in a case for damage resulting from water escaping from an irrigation canal, the verdict was supported by proof of negligence. We may logically infer that the view of the court at that time was such as to require proof of negligence to recover. At a later date this court said in substance that an irrigation district in construction of its drainage ditches incurs no liability in the absence of negligence. While not strictly applicable to the instant case, it is indicative of the tendency of the prevailing view of this court upon the subject.

It therefore follows that in this state the owner of an irrigation ditch or canal is not liable to any one whose land is injured by seepage from said ditch or canal, not intentionally caused by him, unless he is negligent in the construction or operation of the works. The owner of such an irrigating canal or ditch is not an insurer, but is liable for damage caused by seepage caused by his wilful acts, and his negligence in constructing, maintaining, and use of such ditch. In the absence of negligence in this case, neither the Mitchell Irrigation District nor the Gering and Ft. Laramie Irrigation District are liable on account of the seepage caused by the water conducted through their canals or ditches.

The foregoing discussion is illuminative of the general theory of the law applicable to irrigation districts, and the question of their liability relative to the construction, operation and use of their works. It is a matter of common knowledge that thousands of acres of arid or semi-arid land in the western part of this state have either been re-

claimed or improved by means of irrigation. Here, as in the other states wherein irrigation is practiced extensively, the rules of the common law and the statutory law, and the decisions of the courts applicable to waters and water courses have been found inimicable to the public interest, so dependent upon productive agriculture, made possible by the development of irrigation projects. Our Constitution, our statutes and the decisions of our courts all challenge our attention to the desirability as well as the necessity for the modification of these rules. Indeed, so different are the problems and so different are the conditions, that in the western states the rules regulating irrigation have a prevailing tendency toward practicalism.

Irrigation districts are creatures of the statute to serve a public purpose, and were created for specific and certain purposes, namely, to convey water from the place of appropriation at the stream to the owners of the land entitled to the use of said water for irrigation. In its operation, the carrying of water from the point of appropriation at the stream to the place of delivery to the landowner for the benefit of whose land the appropriation was made, the irrigation district is a common carrier. Comp. St. 1922, sec. 8477; *Dundy County Irrigation Co. v. Morris,* 107 Neb. 64. Having undertaken the project, it is required to furnish water to the owners of the land and cannot refuse to so deliver, even if it should appear that in the lawful use of the water by the landowner the percolating waters of subterranean drainage should damage another landowner, such as the plaintiffs in this case. To so refuse would render the irrigation district liable to respond in damages for the failure or refusal to furnish water. Comp. St. 1922, sec. 2926; *Clague v. Tri-State Land Co.,* 84 Neb. 499; *Six v. Bridgeport Irrigation District,* 105 Neb. 254; *Peden v. Platte Valley Farm & Cattle Co.,* 93 Neb. 141; *Meier v. Bridgeport Irrigation District,* 113 Neb. 344. The irrigation district being a common carrier of water from the point of appropriation of the stream to the place of delivery to the owner of the land, required to perform said

service, is not liable by statute for any damages resulting from the lawful application of said water to the land by the owners thereof, or for incidental damage to another caused by seepage.

In recognition of the fact that a large area of semi-arid land has been recovered through irrigation projects, the people of the state, speaking through our Constitution, have said: "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want." Const. art. XV, sec. 4. This was the equivalent of a declaration that water is a natural need, and relying upon this principle our people have secured this natural need through irrigation works, and applying it to the semi-arid lands have made them bud and blossom and bear fruit. Recognizing the necessity of the artificial application of water to land in the interest of good husbandry, this state has recognized and encouraged irrigation by constitutional provision and legislative enactment. We are not unmindful, either, of the well-established rule that an owner of land must so use his own property as not unnecessarily and negligently to injure his neighbor. And we are also cognizant of the rule so well stated by Letton, J., in *Aldritt v. Fleischauer,* 74 Neb. 66: "Every proprietor may improve his property by doing what is reasonably necessary for this purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause surface water to flow on the premises of the latter to his damage." In this case, the problem presented involved the right to drain surface waters from land that it might be made tillable, and it continued as follows: "An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course of drainage in

that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence."

If in the interest of good husbandry, coupled with the right to use the land for an appropriate purpose, it is allowable to drain surface waters, which drainage seems to be a burden imposed upon the lower land, certainly the subterranean drainage is a reasonable burden to impose upon the lower land in localities requiring irrigation in the interests of good husbandry. In localities requiring irrigation in the interest of good husbandry, the lawful application of water is an incident to the ownership of the land. If the owner thereof for such purposes applies the water to his land without negligence, and in a proper manner irrigates his land, the drainage from such lawful, careful, and proper application of water to his land is a burden the lower land must bear. The rule relative to the application of water to land ought not to be more severe than that applicable to the running of water through canals and ditches. The principle herein enunciated was considered in the case of *Gibson v. Puchta,* 33 Cal. 310, wherein it was sought to recover for damages resulting from the irrigation of land which caused water to seep into a mine under said land. It was there said: "The defendant had the undoubted right to cultivate and plant this tract of land; and having planted it, there can be as little question that he had the same right to irrigate it for the purpose of maturing his crop. * * * An action cannot be maintained against him for the reasonable exercise of his right, although an annoyance or injury may thereby be occasioned to the plaintiffs. He is responsible to the plaintiffs only for the injuries caused by his negligence or unskilfulness, or those wilfully inflicted in the exercise of his right of irrigating his land." The defendant's position is possibly no worse than if, unexpectedly, sufficient rain fell on said land to produce the same abundant crops grown by irrigation, and, as a result thereof, the water table under the land should be raised

until his lands seeped. It would be *damnum absque injuria.*

The irrigation district is not absolutely required to drain lands which are seeped by percolating subterranean water caused from the operation of legal irrigation works, except in the manner provided by statute. Section 2887, Comp. St. 1922, provides for the drainage of land within its limits which have been subirrigated by reason of the lawful use of water from its canal by the owner or lessee of the land subirrigated, or from any cause, not at fault or by the consent of such owner or lessees. This section of the statute creates liability *ex contractu* between the owners of land within the irrigation district, but said section does not fix or attempt to fix liability for drainage of percolating or seeped waters from irrigation projects on land without the district. Furthermore, plaintiffs in this case cannot compel the Gering and Ft. Laramie Irrigation District, under the above statute, to drain their lands, inasmuch as they are not within the said irrigation district, and the statutory duty of the irrigation district is limited to lands under the district. One of the defendants in its brief cites *State v. Farmers Irrigation District,* 116 Neb. 373, as holding that they are not required to drain seeped lands within their district. This case does not so hold. The remedy provided by this statute for the drainage of seeped lands that lie within the district is exclusive as to such lands. The theory upon which this case is presented is that section 21, art. I of the Constitution, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." The defendants in this case having the undoubted right to convey to and turn water upon the land under their canals and ditches, and not being liable for damages resulting to adjacent land therefrom, except upon the allegation and proof of negligence, and no such allegation or proof having been made in this case, there is not invasion of property. In order to recover under this self-executing section of the Constitution (*Hopper v. Douglas County,* 75 Neb. 332), property must be taken or damaged for a public use. The method of taking or dam-

aging must violate the rights of the owner thereof. It is not established in this case that any right of plaintiffs has been violated. The cases and authorities cited by the plaintiffs supporting their claim upon this theory do not support the view that the owner of a servient tenement may recover from a dominant tenement. In the absence of negligence in the construction, maintenance, operation, and use of its irrigation works, an irrigation district is not liable to an owner of land for seepage under section 21, art. I of the Constitution. Such negligence neither being alleged nor proved in this case, there can be no recovery. Under the facts established by the evidence in this case the operation for many years of the canal and ditches of the Mitchell district, together with the irrigation of the land thereunder, had raised the water table under plaintiffs' land. At no time, however, had such operations threatened to cause seepage upon plaintiffs' land. It was not until the construction and operation of the Gering and Ft. Laramie district's canals and ditches, and the irrigation and cultivation of land in said district, that the seepage appeared. Even if the Mitchell district was negligent in the operation and use of its canal and ditches, recovery could not be had against it, since its negligence was not the proximate cause of the injury. This court has said: "The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Spratlen v. Ish,* 100 Neb. 844. Citing this case with approval in *Steenbock v. Omaha Country Club,* 110 Neb. 794, the court further said: "It is not sufficient that the negligence charged furnishes only a condition by which the injury is made possible, for if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury." In this case the evidence establishes that the seepage to plaintiffs' land was caused by water seeping from the canals and ditches of the defendants, and from

the application of water for the purpose of irrigation. These percolating waters raised the water table under said land until it came to the surface as seepage. This was augmented by the cultivation of thousands of acres hitherto unbroken sod, upon the construction of the Ft. Laramie Irrigation canal. For over 25 years the identical operation of the Mitchell district had not injured this land. The evidence seems to support the conclusion that, without the intervening contribution of the Gering and Ft. Laramie canal, and the cultivation of a large area draining toward plaintiffs' land, it never would have caused injury. Whether the failure of the Gering and Ft. Laramie Irrigation District to construct drainage ditches to take care of seep and percolating water on its way to return to the river is negligence, as contended by plaintiffs, is a question of fact. It depends upon the facts and circumstances of each particular case, and it is a question for the determination of the jury. The plaintiffs in this case take the position that they seek to recover under section 21, art. I of the Constitution, but at the same time cite numerous cases involving negligence. We conclude that the learned trial judge was correct in his instruction to the jury that the negligence of the defendants was neither alleged nor proved.

We have carefully read the voluminous record in this case, we have had the help of comprehensive briefs, prepared by able counsel, and we conclude that the trial judge was in error in submitting the case to the jury to determine the amount of the damage and render a verdict for the plaintiffs against the defendants, upon the theory that if they had taken or damaged property, under section 21, art. I of the Constitution, they were liable in damages, notwithstanding the fact that, in so far as the record discloses, they were not negligent. Having reached the foregoing conclusions, the discussion of other propositions presented in the briefs is rendered unnecessary. In conformance with the conclusion reached in this opinion, the judgment is reversed and the cause is dismissed.

REVERSED AND DISMISSED.

Rose and Good, JJ., dissenting.

As common carriers of water, defendants exercised the right of eminent domain and constructed, operated and maintained canals and laterals for the purposes of irrigation. Seepage of water carried in the canals and laterals damaged land of plaintiffs and injured their crops without any fault of theirs. The jury so found on abundant evidence of that fact and the trial court entered judgment against defendants on the verdict. On appeal the majority reversed the judgment below and dismissed the action, giving the following among other reasons:

"In this state the owner of an irrigation canal or ditches is not liable to one whose land is injured by seepage from said canal or ditches, not intentionally caused by him, unless he is negligent in the construction or operation of the works. Therefore, the owner of an irrigation canal or ditch is not an insurer against seepage therefrom, but is liable only for negligence and intentional wrongdoing."

In connection with pleas and proofs of damages from seepage, plaintiffs' action is based on the following provision of the Constitution:

"The property of no person shall be taken or damaged for public use without just compensation therefor." Const. art. I, sec. 21.

The right to compensation for property so taken or damaged is absolute. The Constitution imposes no restriction on that right. It does not make negligence the test of a landowner's right to recover damages resulting from an exercise of the power of eminent domain for the purpose of irrigation or for any other purpose. Neither the legislature in granting the right of eminent domain nor the court in exercising judicial power has any authority to make negligence a condition of recovering damages resulting from a violation of that part of the Bill of Rights declaring: "The property of no person shall be taken or damaged for public use without just compensation." Plaintiffs were not legally handicapped by such a condition in an action to recover damages resulting from seepage of water carried

in the canals and laterals operated by defendants. The rulings announced in the opinion would permit defendants, without liability for compensation, to destroy the entire beneficial use of plaintiffs' land by seepage, while conducting waters in their canals and laterals without negligence in construction, maintenance or operation. It was to prevent any such invasion of property rights without compensation that the constitutional provision quoted was inserted in the supreme law by the people of Nebraska. Contrary to the opinion of the majority, the United States circuit court of appeals, eighth circuit, wisely declared the law to be as follows:

"Under Const. Neb. art. I, sec. 21, providing that private property shall not be taken or damaged for public use without just compensation, the owner of an irrigation canal, though constructed under authority from the state for a public service, and maintained and operated in a lawful and careful manner, is liable for damage caused to the land of another as a necessary effect of such operation." *Hooker v. Farmers Irrigation District*, 272 Fed. 600.

The case cited was one to recover damages resulting from seepage of waters conveyed in canals for purposes of irrigation. It arose under the laws of Nebraska and the decision gave effect to the identical constitutional provision now under consideration. In the course of the opinion, which was delivered by Judge Sanborn, it was said:

"If the plaintiff sustained damage, as in our opinion there is substantial evidence here tending to prove, by the temporary negligence of the defendant to so maintain, operate, and use its canal as not to injure plaintiff's property, it is liable on account of its negligence to pay that damage. * * * If, on the other hand, the defendant has inflicted damage upon the property of the plaintiff that is the necessary effect of its permanent maintenance and operation of this canal in a lawful and careful manner, which the state has authorized it to do for the public use, it is liable to pay this damage to the plaintiff because the infliction of such damage without compensation is a violation of the con-

stitutional prohibition against the taking or damaging of private property for public use without just compensation therefor. Constitution of Nebraska, art. I, sec. 21; *Omaha & N. P. R. Co. v. Janecek*, 30 Neb. 276, 27 Am. St. Rep. 399.; *Pumpelly v. Green Bay Co.*, 80 U. S. 166, 167, 177, 179, 181, 20 L. Ed. 557; *United States v. Lynah*, 188 U. S. 445, 469, 471, 47 L. Ed. 539; *Bramlette v. Louisville & N. R. Co.*, 113 Ky. 300; *Jaynes v. Omaha Street R. Co.*, 53 Neb. 631, 641, 649, 650, 39 L. R. A. 751; *Middelkamp v. Bessemer Irrigating Ditch Co.*, 46 Colo. 102, 23 L. R. A. n. s. 795."

The rule announced by Judge Sanborn is in harmony with former opinions of the supreme court of Nebraska. In *Stehr v. Mason City & Ft. D. R. Co.*, 77 Neb. 641, it was held:

"Damages recoverable properly include all damages arising from the exercise of eminent domain which cause a diminution in the value of the property."

This ruling does not make negligence a condition of recovery. In *City of Omaha v. Kramer*, 25 Neb. 489, the court said:

"Constitutional guarantees are of little avail unless carried out in the spirit in which they were framed, and no plea of public benefits should be permitted to impoverish the owner of private property, or override a plain constitutional inhibition."

These views of the law necessarily lead to the conclusion that the decision of the majority is unsound.