David L. FREED, Daniel G. Freed and
Peter Freed, d/b/a Freed Finance Company, a partnership, Plaintiffs,

v.

INLAND EMPIRE INSURANCE COMPANY, an Idaho corporation,
Defendant,

Leo O'Connell, Commissioner of Insurance for the State of Idaho, Defendant and Intervenor,

G. A. Bushnell, Receiver of Trans-Pacific Insurance Company, Intervenor.
No. C–157–55.

United States District Court
D. Utah, Central Division.

Sept. 25, 1957.

Calvin L. Rampton and David K. Watkiss (of Pugsley, Hayes & Rampton), Salt Lake City, Utah, for Receiver of Inland Empire Ins. Co.

Ralph H. Jones (of Jones, Pomeroy & Jones), Pocatello, Idaho, for claimant, Aberdeen-Springfield Canal Co.

CHRISTENSON, District Judge.

The Aberdeen-Springfield Canal Company of Pocatello, Idaho, sometimes referred to herein as "the canal company" or as "the claimant", has filed claim against the Receiver of Inland Empire Insurance Company, hereafter sometimes called "the insurance company", for the amount of damages paid by the former to various farmers for the flooding of lands through a break in its main canal. Liability insurance coverage is conceded by the insurance company, and there is no question raised as to the reasonableness of settlements made by the canal company with the landowners. If the canal company was liable for these flood damages or if that question was resolved in favor of the canal company through agreement between it and its insurer, the claim should be allowed; otherwise, the canal company in making the payments must be deemed to have been a mere volunteer acting on its own account, without right to reimbursement from the Receiver for the insurance company.

Evidence produced at the hearing on this claim, as supplemented by a deposition afterwards presented by the parties with leave of Court, indicated, and the Court finds, that at the time of the break the canal was not carrying an unusual amount of water; that its capacity was adequate to flow the quantity involved, and that while the cause of the break cannot definitely be ascertained, it is probable that a hole or holes made in the bank by muskrats or gophers permitted the escape of water in the first instance and began a process of washing away which culminated in the breaking of a massive section of the bank and the flooding of adjacent lands. Following this occurrence an adjuster for Inland Empire Insurance Company contacted an officer of the canal company. It was decided between them that it would be for the best interests of all concerned to have a committee appointed by the Aberdeen-Springfield Canal Company to ascertain the amount of damages sustained by the farmers, rather than to have a representative of the insurance company directly negotiate, because it was believed that by the former means a more conservative statement of damages acceptable to the farmers could be obtained. Thereafter, a canal company committee carried on negotiations and arrived at settlements with the farmers involved. All of the landowners suffering damages were members of the canal association and users of water from the canal. The canal company was authorized by the adjuster for the insurance company to ascertain the amount of damages claimed by, or acceptable to, the farmers, but was not authorized to make payments for claimed losses, and the insurance company itself authorized no such payments. Negotiations between the insurance adjuster and the canal company in regard to claims of the farmers continued from May, 1953 to September, 1953, in which latter month, the insurance company denied liability to the canal company. The Inland Empire Insurance Company went into receivership in November, 1955. No demand was made and no action was taken against the insurance company between the time it denied liability in September, 1953 and the time it went into receivership.

No affirmative proof of negligence on the part of the canal company is contained in the record. It is conceded by claimant's counsel that Idaho has adopted a theory of liability based on negligence in such cases as this. However, reliance is strongly placed by him upon the doc-

trine adhered to in Barnum v. Handschiegel, 103 Neb. 594, 173 N.W. 593 and East Liverpool City Ice Co. v. Mattern, 101 Ohio St. 62, 127 N.E. 408, and reflected in 93 C.J.S. Waters § 156, p. 873, to the effect that where plaintiff proves the breaking of a dam and resulting injuries, a prima facie case of negligence is thereby established.

Counsel for the Receiver suggests that this rule is confined to jurisdictions where absolute liability for flooding is recognized; but on the contrary, in both Nebraska and Ohio the rule of liability for negligence, rather than the common-law liability of a virtual insurer, is recognized. Spurrier v. Mitchell Irr. Dist., 119 Neb. 401, 229 N.W. 273, 74 A.L.R. 884; Barnum v. Handschiegel, supra; East Liverpool City Ice Co. v. Mattern, supra. Nonetheless, it is necessary to examine the claimant's position further since there appear other reasons why the rule contended for by it does not control this case.

Each of the cases last cited deals with a dam erected in a channel of a water course whereby the level of the water is raised above the natural surface. The C.J.S. citation falls under the division of that work headed, Injuries by Breakage, Leakage and Overflow of Dams, p. 870 et seq. That there may be a distinction properly drawn between the rule in such cases and the rule governing the facts here is at least suggested by the separate treatment C.J.S. accords to the subject, Liability for Injuries from Construction, Operation and Maintenance of Works, with particular reference to irrigation ditches or canals. 94 C.J.S. Waters § 365, p. 432 et seq. With a similar distinction in mind, it is stated in Mackay v. Breeze, 72 Utah 305, 269 P. 1026, 1027, as follows:

"The rule of law announced in the leading English case of Fletcher v. Ryland, 1 E.R.C. 235, where it is held that the defendant was under an absolute duty to keep water which he had collected in a reservoir from doing injury to others, has not generally been applied to ditches and canals. * * * "

The point I make is not that in Nebraska, Ohio, Utah or Idaho, there is absolute liability in the case of dams as distinguished from canals, for in each state the contrary appears true. But there is at least some distinction drawn between the two classes of works, and with respect to a prima facie case in those jurisdictions which might be inclined to recognize the Nebraska rule as to dams, it does not necessarily follow that there would or should be such recognition in the case of canals. Moreover, considerations might encourage the application of the doctrine of res ipsa loquitur to dams while denying it to canals or ditches.

The Nebraska rule is an extension of the doctrine of res ipsa loquitur, and the Ohio cases are based expressly upon the latter doctrine. At least some logic supports this view in the case of dams, the installation of which is generally attendant by known dangers and predictable consequences. Ordinarily, they are under the sole control of the reservoir operators, have been constructed in localized areas, can be readily inspected, and, if properly designed and carefully constructed, will not give way except by reason of unprecedented conditions. Despite this, no authority has been cited from any of the arid western states and especially none from Idaho, applying the doctrine of res ipsa loquitur to the breaking of dams, much less to the breaking of canals or ditches.

Under the facts in this case especially, the doctrine of res ipsa loquitur could not apply since several of its foundations are absent. There was no exclusive control shown. Certainly, the Court will take judicial notice that access to many miles of canal bank would not be limited to the agents of the canal company. The occurrence was such as might occur in the absence of negligence. Despite liberality of the courts, both in Utah and Idaho, in inferring negligence from facts which have a logical, as dis-

tinguished from a speculative, tendency to establish it, in neither state does it seem to have been suggested that the doctrine of res ipsa loquitur applies in the case of flooding or seepage from canals. On the contrary, in both states, there is a clear indication that the usual rule imposing the burden upon the plaintiff to establish negligence, obtains. McCarty v. Boise City Canal Co., 2 Idaho, Hasb., 245, 10 P. 623; Burt v. Farmers' Co-op. Irr. Co., 30 Idaho 752, 168 P. 1078; Coulsen v. Aberdeen-Springfield Canal Co., 39 Idaho 320, 227 P. 29; Macomb v. Extension Ditch Co., 70 Idaho 202, 214 P.2d 464; Mackay v. Breeze, supra; Chipman v. American Fork City, 54 Utah 93, 179 P. 742; Jensen v. Davis & Weber Counties Canal Co., 44 Utah 10, 137 P. 635; West Union Canal Co. .v. Provo Bench Canal & Irrigation Co., 116 Utah 128, 208 P.2d 1119; see also Annotation, Waters, liability for overflowing, 169 A.L.R. 517, 521 (intentional acts), 523 (liability based on negligence); Garden City Company v. Bentrup, 10 Cir., 1955, 228 F.2d 334.

There was testimony from an officer of the canal company tending to show that inspection for rodent damage along the canal during the year in question may not have been as taut as in previous years, and that the bounty program theretofore carried on by the canal system to encourage the destruction of gophers may have been relaxed. The main canals in the system extended over seventy miles and traversed thousands of acres. To conclude that a reduced bounty program at any particular time was the proximate cause of the activity of the specific rodents that may have been involved in this case and at the location of the break, would be pure speculation, aside from the fact that the evidence indicated at least an equal possibility that the damage may have been caused by muskrats and not by gophers. To say that the hole or holes causing the break would have been within the view of an inspector had he come along that section of the canal at any time, would again be only the first fragile link in a disjointed chain of speculation, for it would be necessary to speculate further that the timing of inspections, however careful, would have revealed the hole or holes between the time they first became apparent and the time of the flooding, and if they had been revealed to the inspector during any stage of this process that he could have stopped the flooding or diverted the flow before all of the damage, or any of it, had been done. There was no evidence introduced to assist the Court in resolving these and other uncertainties. There was no showing that the construction of the canal was in any sense unsuitable for the type of terrain involved in view of the dangers that could be expected from rodents, or of any other fact from which the Court reasonably could find that negligence, if any, of the canal company, proximately caused the damage.

By reason of the negotiations between the canal company and the insurance company concerning the claims of the farmers, is the insurance company bound to recognize, or is it estopped to question, the canal company's claim? An insurance company which negotiates with those making claims against its assured to ascertain the amount of their claims and whether acceptable compromise settlements can be arrived at, does not thereby foreclose itself from questioning those claims or its liability to pay them as between it and its assured. This would seem to be true whether the negotiations are carried on directly or through the insured, providing that there is no assumption of liability going beyond this and no facts making it inequitable for the insurer thereafter to deny liability. If this were not so, in almost every case an insurance company would be bound to pay third-party claims even though there were no basis of liability. It is generally the practice and, in many cases, the duty of insurance companies to ascertain what third-party claimants will accept in settlement before subjecting themselves or their assured to litigation. But this does not authorize the assured to make payment

of the claims under investigation and thus to bind the insurer in the absence of authorization. Settlement by an assured, without the previous consent of the insurer ordinarily releases the insurer. 8 Appleman, Insurance Laws and Practice, p. 85, § 4714.

The fair substance of the testimony on this phase of the case is aptly summarized in the claimant's opening brief in these words:

> "It was agreed between the insurance adjuster, Mr. Weeks and Jake Isaak that it would be to the best interest of both parties to have the canal company take the matter up with the farmers and ascertain the amount of their loss and what settlement they would accept."

Claimant's counsel argues, beyond this, that Mr. Isaak, the general manager and water-master of the canal company, testified that the insurance adjuster advised him not only to ascertain the amount of the loss but to pay the same and that the insurance company would reimburse the canal company for the damages so paid. The record does not fully support this contention. What Isaak testified to in substance was that the adjuster told him that if the canal company "would settle the case or negotiate with the farmers he thought we could make a better deal. * * *" I can find in his testimony no claim that there was an express promise to pay or an assumption of liability on the part of the insurance company or its adjuster. Weeks, the adjuster, has denied any such arrangement. It is not contended that the insurance company otherwise authorized payment. Because of the rather general and equivocal nature of Mr. Isaak's testimony, the absence of confirmation from any other source and the positive statement of Mr. Weeks to the contrary, and also in view of the long period between denial of liability by the insurance company as a going concern and the assertion of such a contention by the canal company, I believe that the claimant has failed to sustain its burden of proof to show such agreement. Nor is there evidence from which the Court could find an estoppel, even if one had been pleaded or otherwise asserted.

There may have been reasons other than strict legal liability why the canal company would desire to recompense its users for injuries suffered by them in connection with the operation of the canal system, especially when there was at least a possibility from the canal company's standpoint that the insurance company would eventually make reimbursement voluntarily or later developments might permit a recovery. Any disappointment of the canal company that one or the other of these contingencies has not materialized, and the indisposition of the Court to deny the claim of a policyholder when there is a suggestion that the insurance adjuster may have loosely availed himself of its willingness to cooperate, are not sufficient reasons upon which to base an award.

I am of the view, therefore, that the claim of Aberdeen-Springfield Canal Company should be, and it is, hereby rejected.