### TENNEY *v.* THE MINERS' DITCH CO.

Where the plaintiff sued for an injury to his mining-claim, by the breaking of defendant's canal, which was constructed prior to the location of plaintiff's claim, neither party claiming ownership of the soil, and no negligence in fact being shown, other than that which the law would presume from the breaking of the ditch: *Held,* that the rights of the parties were acquired at the dates of their respective locations, and that rule of " coming to a nuisance," may be applied.

There is no doubt that the ditch-owners would be responsible for wanton injury or gross negligence, but they are not liable for a mere accidental injury, where no negligence is shown, to a miner locating along the line subsequent to the construction of the ditch.

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

The plaintiff brought his action for damages to his mining-claim, sustained by reason of the breaking away of a portion of defendants' ditch, owing to the careless manner of its construction, and the consequent overflowing of plaintiff's claim. It appeared by the record that plaintiff had located his claim subsequent to the construction of defendants' ditch. The question of negligence was submitted to the jury as a question of fact, under the instructions of the Court below, and they found a verdict for the defendants. The substance of the evidence on the question of negligence is stated in the opinion of the Court, as well as the instructions asked by plaintiff, and refused by the Court below, which refusal is assigned as error. Motion for a new trial was made and overruled, and judgment entered for defendants.

Plaintiff appealed from the order overruling the motion for a new trial.

*Henry Meredith* for Appellant.

If one undertakes to convey a thousand running inches of water over a given space, by a conduit too flimsy and weak to bear the weight of such a quantity, *the conclusion of negligence is irresistible,* and by every rule of justice he should be responsible for the damages resulting therefrom, to another.

A person might undertake the conveyance of a stream of water, by means of a cotton hose, or a cobweb fabric, and all the care imaginable, in the construction or repair of it, would not exculpate him from the charge of negligence.

It is equally true of one who undertakes to carry water by ex-

cavating in soil which will hardly sustain its own weight, and upon a surface nearly approaching a perpendicular.

The degree of care which a person who constructs a dam across a stream, is required to use, is in proportion to the extent of the injury, which will be likely to result to third persons, and it is *not enough* that the dam should be *sufficient* to resist ordinary floods, but great freshets must likewise be guarded against. Mayor of City of New York *v*. Bailey Denio, 433.

A party injured in consequence of the negligent construction of a dam, though the building of the dam be authorized by statute, is entitled to recover to the extent of the damage done. Crittenden *v*. Wilson, 5 Conn. R., 165 ; Bagley *v*. Mayor of N. Y., 3 Hill R., 531 ; Lapham *v*. Curtis, 5 Ver., 371.

The above authorities are referred to in Angell on Watercourses, §§ 335 and 336, where the general doctrine upon the subject may be found.

That the ditch, as constructed and maintained by defendant in this case, was insufficient to carry the water permitted to flow through it, and broke from the weight or quantity allowed to flow, is a truth apparent from the testimony ; and if a party is not to be held responsible for his rash, unreasonable, and careless election of the means of carrying water through the mines, then every person and interest in the vicinity of a ditch, or reservoir, are left liable to destruction, and without a remedy.

*McConnell*, for Respondents.

Admitting, for argument's sake, the abstract principle of law embodied in the instruction asked for to be sound, still we say that there was no error in the refusal to give it.

It may or may not be true that the law implies or presumes negligence, from the fact of a " break " having occurred, and an injury having been done. Granting that it does, then an instruction similar to the above would only be proper in a case where a jury must be guided by legal presumption instead of positive proofs in order to arrive at a verdict.

By reference to the pleadings, the evidence presented in the statement, and the instructions given by the Court, it will be seen that the issue of negligence or no negligence, was distinctly made, and that the verdict of the jury, in effect, necessarily exempts the defendants from the imputation of negligence in fact.

We deny, however, the legal propriety of the instruction offered by the plaintiffs.

There is no such thing as legal presumption of negligence in cases of this sort.

Negligence is a fact to be proved or disproved, as all other facts are, by the evidence produced before the jury.

If the instruction was intended to mean no more than that certain facts were sufficient to constitute a *prima facie* case of

negligence, it might perhaps in that view be regarded as good law, though totally inapplicable to the case at bar, for the reasons already given, viz.: that the whole case both of plaintiffs and defendants was before the jury, and no instruction could be proper which referred only to the plaintiff's *prima facie* proof.

But it is evident that the instruction was intended to mean far more than that proof of breakage and proof of injury were sufficient to make a *prima facie* case against defendants.

The phrase, " the law presumes negligence," has a peculiar and somewhat technical arbitrary meaning, and carries with it the impression of a legal presumption or estoppel, which the law will not permit to be denied or rejected.

But again, the instruction requires the jury to find absolutely for plaintiffs, provided the " defendants' ditch was insufficient to carry the water, and broke from the weight or quantity of water allowed to flow through it."

Now, all of this, we say, might have been true, and yet the defendants be guilty of no negligence, and if guilty of no negligence, it will be conceded they were not liable in damages.

The weight or quantity of water running in the ditch might have been the proximate cause of its breaking, and yet, the actual first cause have been entirely out of the control of the defendants. That such was the case here, the Court will perceive by the evidence.

The record shows that the defendants constructed this ditch before the plaintiffs located and went into possession of their mining-claims.

This is a most important fact, having a direct bearing on cases of this sort, arising in this part of the country, where all private rights and interests in land or water are held by naked location and possession, or appropriation.

Of course, we do not mean to say that mere priority of location will excuse a man for a wanton or willful injury to the property of another, or that it will absolve him from those duties of a good citizen, which are implied in that neighborly maxim, " *Sic utere tuo ut alienum non lœdas* "—but only that " he who is first in time," being also first in right, is not held to that strict accountability which attaches to a right subsequently acquired.

This, we admit, is not generally regarded as the law, when applied to such rights as spring from the ownership of the soil itself, for then, mere priority, unless continued for a time long enough for the Court to imply a grant, will avail nothing.

Hence it is that most of the reported cases on questions of this sort, in England and the older States of the Union, put no stress whatever on the fact of priority, except when it amounts to twenty years or more.

The reason of the law in this respect is too obvious for com-

ment; but in this case the same reason does not exist, inasmuch as the plaintiffs had no title to the mining ground, subsequently located by them, it was impossible for the defendants when they constructed their ditch, to look forward to a period when the plaintiffs should occupy it for mining or other purposes.

Here the right itself is created by the act of location or appropriation. It had no existence at the date of the construction of defendants' ditch, or for a considerable time after.

Now, then, supposing the defendants liable, for what are they liable? For building the ditch, or for continuing it?

They cannot be liable for building the ditch, for at that time there was no right in existence to be impaired by it.

In the case of the owner of the soil, although he may suffer no actual damage from the act of another, yet if that act be in conflict with his right, he may recover nominal damages in support of his right.

In this case, however, it is sufficiently manifest that the plaintiffs, by going upon and taking possession of their mining ground, did not *ipso facto* acquire a right of action against the defendants for the careless construction of their ditch, because the rights acquired by the act of location, date from the day of the location, and have no relation back to any antecedent period.

The principle for which we contend is in effect identical with the doctrine so often discussed and so often settled by this Court, viz.: that as between rights acquired by mere location, or appropriation, the first in point of time shall be preferred.

The conclusion, then, of the whole matter is:

1. That this is one of the cases to which the doctrine of "coming to a nuisance" applies, and that, therefore, plaintiffs located their mining-claims, subject to the prior location and rights of defendants.

2. That by means of the location of their mining ground, the plaintiffs did not impose on the defendants any greater obligations in respect to care and prudence than the law had already imposed on them, and that, therefore, the defendants cannot be held liable, provided they exercised that degree of diligence which the law had imposed on them prior to plaintiffs' location.

The maxim "*sic utere,*" etc., upon which all cases of this sort are grounded, must be construed with an eye to the rights of all parties concerned. A man cannot be deprived of the due enjoyment of his own property, because he may in the use of it do hurt to another. In Parton *v.* Holland, 17 John. R., 99; Platt *v.* Johnson & Root, 15 John., 213; Comyn's Digest, title Action on the Case; 3 Man. & Gran., 515; Townsend *v.* Susquehanna Turnpike Co., 6 Johns. Rep., 90; Clark *v.* Foot, 8 Johns., 421; Durham *v.* Mussleman, 2 Blackford's Rep., 96; 2 Black. Com., 43; Sack *v.* Seward, 4 Carr & Payne, 105, Vol. 19, E. C. L. Rep.;

Also, 6 Carr & Payne, 23; 8 Carr & Payne, 373; Vanderpool v. Miller, 1 Moody & Malkin, 169; 3 Kent's Com., 436, note; Higgins v. Ches. and Del. Canal Co., 3 Harrington Rep., 411; Cook v. Champlain T. Co., 1 Denio, 99; 1 Wheaton's Selwyn, 441 to 443, inclusive, and notes.

MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

This was an action of trespass on the case for negligence in constructing a water-ditch so that it gave way and flooded the plaintiffs' mining-claims. Judgment for the defendants, and motion for new trial overruled, from which plaintiff appeals.

The error assigned by the appellant is the refusal of the Court to give the following instruction: " That when a ditch is insufficient, and breaks from the weight or quantity of water permitted to flow through the same, the law presumes negligence in its construction or continuance, and if from the evidence the jury believe that the defendants' ditch was insufficient to carry the water and broke from the weight or quantity allowed to flow through the same, and that the plaintiffs were injured by such breakage, the jury will find for plaintiffs." The correctness of this instruction must depend upon the testimony before the jury.

It appears from the record that the question of negligence had been submitted to them as a question of fact under the instruction of the Court; that evidence had been introduced by the defendants to disprove the charge or exculpate themselves. It was shown, among other things, that the sides of the ditch at the place it gave way had been dug down or injured by some burrowing animal, and also that a tree had accidentally fallen across it, causing the water to dam up, and thereby creating a greater pressure upon the sides of the ditch. It was further shown that the defendants had located and constructed their ditch previous to the location of the plaintiffs' mining-claims. No negligence, in fact, was shown, other than that which the law would presume from the breakage of the ditch.

The important fact having been admitted, that neither of the parties claim as holders of the soil, but simply by virtue of location or appropriation, it becomes necessary to ascertain what rights the plaintiffs, who were subsequent locators, acquired against the defendants.

Some of the earlier English authorities recognize the doctrine that a person may (even as between owners of the soil) construct or continue what would otherwise be an actionable nuisance, provided that, at the commencement of it, no person was in a condition to be injured by it, or, in other words, that mere priority as between owners of the soil gave a superior right. If a person afterwards, by building or otherwise, put himself in a

situation to be injured by such structure, it was termed "coming to a nuisance."

This doctrine has long since been exploded on the most obvious principles of sound reason. The right of the owner of the soil to the free use and enjoyment of the same is held to exist anterior to any erection that may be made by an adjoining proprietor, and in such cases the maxim "*sic utere tuo ut alienum non lœdas*" applies. It will be observed that the reason of the rule is founded on the ownership of the soil, and that as between proprietors the same rights or privileges are supposed to exist (except in some few instances); but in a case like the present, where neither party claims an ownership in the soil, and all the rights they possess relate back, or are acquired at the date of their respective locations, the reason of the rule ceases, and the maxim, "*qui prior est in tempore, potior est in jure*," as applied by this Court to cases involving disputes growing out of mining-claims, would seem more applicable.

In fact, any other rule would allow a malevolent person to make a trespass whenever he pleased, by settling along the line of a water ditch or canal where he supposed from its location, or construction, it was most likely to give way. There is no doubt that the owners of a ditch would be liable for wanton injury or gross negligence, but not for a mere accidental injury where no negligence was shown. In such cases, the maxim "*sic utere*," etc., must be construed with reference to the rights of all the parties concerned, and no man can be deprived of the due enjoyment of his property and held answerable in damages for the reasonable exercise of a right. 15 Johns., 43; 17 Johns., 99; 6 Johns., 90; and 3 Manning & Granger, 315. In the latter case it was held that a railroad company were not liable for damages caused by fire from sparks from their engine, unless negligence was proven by the plaintiff.

Having thus established what we believe to be the law of the case, it follows that the Court properly refused the instruction asked.

Judgment affirmed.