JOHN F. BARNUM, APPELLEE, v. JOE HANDSCHIEGEL, APPELLANT.

ALBERT R. KENNEDY, APPELLEE, v. JOE HANDSCHIEGEL, APPELLANT.

FILED JUNE 23, 1919.   No. 20483.

1. **Waters:** "STORAGE RESERVOIR." A dam built across a creek channel from bank to bank to impound water comes within the exception noted in section 3444, Rev. St. 1913, which provides that "a reservoir constructed for the purpose of holding water back and raising it in order that it may be applied to lands of a higher level or given a greater head for power, shall not be considered a storage reservoir."

2. ———: BREAKING OF DAM: LIABILITY. An upper riparian owner who constructs a dam across a creek channel is not liable for damages arising from the breaking thereof, unless the dam has been negligently constructed or maintained.

3. ———: ———: DAMAGE: BURDEN OF PROOF. When damage ensues from the breaking of a dam across a creek channel the burden of proof is upon the plaintiff; but, when he has established the breaking and resulting injury, he has made a *prima facie* case. The defendant must then show that the dam was not negligently constructed or maintained.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

B. P. McKelvey, E. D. Crites and F. A. Crites, for appellant.

J. E. Porter, contra.

DEAN, J.

John F. Barnum and Albert R. Kennedy are lower riparian owners on White Clay creek in Dawes county. They began separate actions against three upper riparian owners to recover for damages sustained, as alleged in plaintiffs' petition, by the breaking of "an earth dam or embankment" erected by defendants across the channel of White Clay creek and the consequent escape of a

large and destructive body of water over and upon plaintiffs' land. The suits were dismissed as to all defendants except Joe Handschiegel, against whom Barnum recovered a judgment for $210, and against whom Kennedy recovered a judgment for $442. Defendant Handschiegel appealed.

The issues in both cases are identical. Pursuant to agreement in the district court, they were heard together, and they will be disposed of here as one case.

Plaintiffs alleged that defendants maintained on their land "a water storage reservoir formed by placing across the channel and from bank to bank of said White Clay creek an earth dam or embankment about twenty (20) feet high, whereby a large body of the waters of said stream were held back upon defendants' said land in storage as an ice and fish reservoir and for irrigation and other uses beneficial to defendants." It was alleged, too, that the dam was not properly constructed so as to prevent "injury and breaking by the ordinary high waters to which said creek is subject in springtime of each year and during heavy rains," and that in March, 1917, because of defective construction, the dam broke and plaintiffs respectively sustained the damage complained of.

The answer alleged that the plans of the dam were submitted to and approved by the state board of irrigation, and that it was constructed and installed under the supervision and direction of the board "with reasonable and ordinary care and skill, so that said dam was at all times capable of resisting the waters of said stream in times of ordinary, usual and reasonably to be anticipated freshets, and such extraordinary flows of water as the defendant might reasonably have expected would flow down said creek." It was also pleaded that the break in the dam was caused by "an unusual and extraordinary and unprecedented freshet and high water on said White Clay creek, and its said affluent, not reasonably to be expected, anticipated and provided for by any

ordinarily prudent person, and that the same was not to be and was not anticipated by said defendant Joe Handschiegel in the exercise of reasonable and ordinarily prudent care." It was also alleged that the flood that caused the dam to break was in part increased in volume by an "unusual and unprecedented melting of heavy snows." Defendant also pleaded that the breaking of certain dams of upper riparian owners caused such a volume of water to rush down White Clay creek that his dam was thereby destroyed "without any fault or negligence on his part." That the dam was destroyed by the act of God, and not because of defendant's negligence, was sufficiently pleaded. 1 C. J. 1177.

Before any evidence was submitted, plaintiffs moved "to withdraw from the consideration of the jury all questions in the case except the amount of damages, if any, sustained by plaintiffs." The court ruled: "The motion will be sustained for the following reasons: That section 3444 of the Revised Statutes of 1913 provides for the construction and maintenance of storage reservoirs for irrigation or any other useful purpose, and among other things provides that 'the owner or owners of such storage reservoir shall be liable for damages arising from the leakage or overflow of the water therefrom, or from the breaking of the embankment of such reservoir.' In the opinion of the court this statute abrogates the common-law rule in cases of this kind, and makes the owner of the reservoir and of the dam absolutely liable for damages, and all damages resulting from the breaking of his dam. Under the pleadings in these cases, the building and ownership of the dam is admitted, also its breaking and destruction, and in the judgment of the court the other defenses introduced herein and set up in defendants' answers do not constitute a defense as to the liability of the owner of the dam for all damages resulting from its breaking."

The court in its ruling apparently overlooked the concluding part of section 3444, Rev. St. 1913, which reads:

"Provided, however, a reservoir constructed for the purpose of holding water back and raising it in order that it may be applied to lands of a higher level or given a greater head for power, shall not be considered a storage reservoir." The bank to bank structure complained of by plaintiffs was erected in the creek channel "for the purpose of holding water back and raising it." Hence it comes within the exception of the act which provides that such construction "shall not be considered a storage reservoir." In view of the exception noted, we hold that the provision of the act in question that imposes liability for the breaking of the embankment of a "storage reservoir" does not apply to the breaking of a dam built across a creek channel such as that described in the pleadings. We do not, however, decide the question of the liability of an upper riparian owner in respect to damage arising, either from the construction of a "storage reservoir" as designated in the statute, or from the breaking of an embankment thereof, that has been constructed under section 3444, Rev. St. 1913, because such questions are not involved here.

The exception in the statute apparently recognizes a distinction that has been generally recognized as between a "storage reservoir" into which water is diverted from a natural stream and a dam that is built across a creek channel to raise water; the former being a use less usual, while the latter is a use that has been recognized and practised from time immemorial. At common law the rule is that the owner is not relieved of liability for damage that accrues to a lower riparian owner from the breaking of the bank of a storage reservoir into which water has been diverted unless such breaking is caused by the act of God or *vis major*. *Rylands v. Fletcher*, L. R. (Eng. & Irish) 3 H. L. 330; *Nichols v. Marsland*, L. R. (Eng.) 2 Exch. Div. 1.

It seems that the owner of a dam erected across a natural stream for the purpose of raising water for

rrigation, or power, or other useful purposes, in the event of damage from breaking, is liable only for negligent construction or maintenance. The act of God is of course always a defense./ 3 Farnham, Water and Water Rights, sec. 875; *City Water Power Co. v. City of Fergus Falls,* 113 Minn. 33; *Lapham v. Curtis,* 5 Vt. 371; *Mayor of New York v. Bailey,* 2 Denio (N. Y.) 433; *Pollett v. Long,* 56 N. Y. 200; *Inhabitants of Wendell v. Pratt,* 12 Allen (Mass.) 464; *Inhabitants of Shrewsbury v. Smith,* 12 Cush. (Mass.) 177; *Gray v. Harris,* 107 Mass. 492; *Moore v. San Vicente Lumber Co.,* 175 Cal. 212; *Parker v. Larsen,* 86 Cal. 236. Teller, J., in a dissenting opinion in *North Sterling District v. Dickman,* 59 Colo. 169, aptly says: "The basis of the Rylands rule is the distinction between the natural and the nonnatural use of land, and it applies only in the latter case. From time immemorial streams have been the source of power, and the placing of dams on them is a natural use of them. Hence, it has been generally held that for the breaking of such a dam there is no liability in the absence of neligence."

The burden of proof is upon the plaintiff; but, when he has established the breaking of a dam and resulting injury, he has made a *prima facie* case. The defendant must then show that the dam was not negligently constructed or maintained. From the nature of the case it would be difficult, if not impossible, for a plaintiff to prove the existence of a defect in a dam that caused it to break. The facts attending the construction and maintenance of a dam being peculiarly within the knowledge of the owner, he should be required to show the exercise of a degree of care commensurate with the injury that might occur in the event that the dam should break.

The building of dams in creeks for the purpose of raising water and the construction of irrigation projects for the advancement of agriculture, or to obtain power, or for other useful purposes, is a matter of increasing importance in the development of the natural resources

of the state and of the west generally.  This enterprise has been fostered by wise legislative enactment and its growth encouraged by such means as are consistent with safety to life and property.  It is common knowledge that the artificial accumulation of a large body of water above the ordinary level by means of a dam or by diversion to a "storage reservoir" may become a dangerous element if permitted to break its barriers and escape.  Doubtless with some such thought in mind the legislature enacted section 3421, Rev. St. 1913, which provides: "Any person, corporation or association hereafter intending to construct any dam for reservoir purposes or across the channel of any running stream, shall, before beginning such construction, submit the plan of the same to the state board of irrigation, highways and drainage for their examination and approval, and no dam shall be constructed until the same shall have been approved by such board."  For a violation of the act by a riparian owner a severe penalty is provided.  The law imposes a very great responsibility on the board, and it follows that the utmost care and viligance devolves upon that body in the exercise of its duty in the premises.

In view of the pleadings and the authorities, the trial court erred in refusing to permit defendant to submit proof of the allegations of his answer.  The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.