526 P.2d 174

**John M. BARKER et al., Plaintiffs,**

v.

**Lee WAGNER, as Secretary of the Board of Directors of the American Falls Reservoir District, Defendant.**

No. 11600.

Supreme Court of Idaho.

July 19, 1974.

Rehearing Denied Sept. 6, 1974.

Thomas G. Nelson, Parry, Robertson, Daly & Larson, Twin Falls, for plaintiffs.

William D. Collins, Collins & Manly, Boise, for defendant.

McQUADE, Justice.

This is an original proceeding for a Writ of Mandate to compel Lee Wagner, the Secretary of the Board of Directors of the American Falls Reservoir District (Secretary), to give notice of two elections in the American Falls Reservoir District (District) which have been called by its Board of Directors pursuant to the authority contained in H.B.No. 354.[1] One election is for approval of the District entering into a contract for construction of the replacement dam at the American Falls Reservoir and issuance of bonds to finance the construction, and the other election is for approval of the District imposing assessments on lands served by the District for their proportionate share of construction costs.

The American Falls Dam and the American Falls Storage Reservoir are located on the Snake River in Southern Idaho. The original dam was completed in 1928 and is owned by the United States government as part of a Federal Reclamation project. The construction of the original dam was financed in part by the District pursuant to a contract with the United States whereby the District purchased a 28.6% of the wa-

1. Idaho Sess.Laws, Ch. 1 (1974).

ter storage capacity of the dam and agreed to pay to the United States 28.6% of the cost of constructing the dam.

The United States Bureau of Reclamation has determined that the original dam is no longer structurally sound and has placed restrictions upon the maximum level of water in the reservoir. Currently the water level is set at less than 67% of the usable water storage capacity. Furthermore the dam is continuing to deteriorate which will result in the water level being reduced in the future.

There are 35 entities (spaceholders) that own shares of the water storage capacity of the original dam: 14 irrigation districts including the District, 16 canal and irrigation companies, 2 private companies, 2 individuals and the United States Indian Irrigation Service. Within the District there are 5 canal companies which have rights to the storage, diversion and delivery of water out of the storage rights of the District. The lands that the 35 spaceholders serve are arid and require irrigation to produce crops.

The federal government has not appropriated the necessary funds for the construction of a replacement dam. The Congress of the United States has enacted public law 93–206[2] which authorizes the Secretary of the Interior to enter into an agreement with the District for construction of a replacement dam and upon completion of the replacement dam, title is to be transferred to the United States. It also authorizes the District, subject to approval by the Secretary of the Interior, to contract with non-federal electric power producers for the use of the falling water discharged by the dam. The monetary return from the falling water contract is to be used to defray part of the cost of construction of the replacement dam. Public Law 93–206 also provides that the District may enter into agreements with other spaceholders for repayment by them of

their proportionate share of the total cost incurred in the replacement dam.

The Idaho State Legislature has enacted Idaho Sess. Laws ch. 1 (1974), which authorizes irrigation districts after approval at a special election of ⅔ of the qualified electors voting, to reconstruct and improve dams and to issue bonds for payment of the construction. Idaho Sess. Laws ch. 1 (1974) provides that the bonded indebtedness shall be payable solely out of a special fund into which the irrigation district shall deposit; (1) The collection of benefit assessments levied by the irrigation district; (2) Payments pursuant to contracts entered into with other public or private irrigation entities; (3) The proceeds from the sale or use of falling water for power production.

Idaho Power Company, which presently owns and operates a hydroelectric power plant below the original dam, has offered to enter into a falling water contract with the District. The proposed contract provides that Idaho Power Company would pay to the District for the use of falling water for power production 40 annual installments sufficient to retire $19,000,000 of bonds issued by the District. The falling water contract is subject to approval by the Secretary of the Interior as provided in Public Law 93–206.

The Board of Directors of the District adopted a resolution calling for a special election to submit to the District's electors a proposal that the District enter into a contract with the Secretary of the Interior for construction of a replacement dam to be financed by the issuance of bonds by the District in the amount of $30,000,000 to be retired within 45 years from the date of issue. The bonded indebtedness would be retired through receipts from a falling water contract with the Idaho Power Company, contracts with other spaceholders for their proportionate share of the construction costs, and assessments on lands within the District for their proportionate share of construction costs.

2. Pub.L. No. 93–206 (Dec. 28, 1973).

The Board of Directors also adopted a resolution calling for a special election to submit to the District's electors a proposal that the District collect from the land served by the District assessments representing their proportionate share of the construction costs of the replacement dam.

Although the Board of Directors has directed the Secretary to give notice of the bond election and the assessment election, the Secretary has refused to give the notices. The District filed this original proceeding for a Writ of Mandate to compel the Secretary to give the notices for the two elections.

The Secretary contends that a Writ of Mandate ordering him to give notice of the elections should not be issued because the proposed bonds are in violation of art. 8 § 3 of the Idaho Constitution. It is provided in art. 8 § 3 that,

"Limitations on county and municipal indebtedness.—No county, city, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state and provided further that any city may own, purchase, construct, extend, or equip, within and without the corporate limits of such city, off street parking facilities, public recreation facilities, and air navigation facilities, and, for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two-thirds of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such facilities as may be prescribed by law, and provided further, that any city or other political subdivision of the state may own, purchase, construct, extend, or equip, within and without the corporate limits of such city or political subdivision, water systems, sewage collection systems, water treatment plants, and sewage treatment plants, and for the purpose of paying the cost thereof, may, without regard to any limitation herein imposed, with the assent of a majority of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by such systems, plants and facilities, as may be prescribed by law; and provided further that any port district, for the purpose of carrying into effect all or any of the powers now or hereafter granted to port districts by the laws of this state, may contract indebtedness and issue revenue bonds evidencing such indebtedness, without the necessity of the voters of the port district authorizing the same, such revenue bonds to be payable solely from all or such part of the revenues of the port district derived from any source whatsoever excepting only those revenues derived from ad valorem taxes, as the port commission thereof may determine, and such revenue bonds not to be in any manner or to any extent a general obligation of the port district issuing the same, nor a charge upon the ad valorem tax revenue of such port district."

The Secretary contends that the proposed bonds violate art. 8 § 3 because they have a maximum maturing date of 45 years whereas art. 8 § 3 provides that bonds must mature within 30 years. Moreover, the Secretary argues that the 1972 amendment to art. 8 § 3 which increased the maturing period of bonds from 20 to 30 years was invalid because the amendment included two different subjects in violation of art. 20 § 2 of the Idaho Constitution. It is also argued that the proposed bonds are in violation of art. 8 § 3 because there is no provision for the collection of an annual tax to pay the interest on the bonds as it falls due and to constitute a sinking fund for the payment of the principal. These two issues need not be decided in this case since we hold that art. 8 § 3 does not apply to irrigation districts for the reasons herein discussed.

The limitation on indebtedness of art. 8 § 3 applies to counties, cities, boards of education, school districts or other subdivisions of the state. The question for this proceeding is whether the irrigation district is a subdivision of the state.

In the case of Jensen v. Boise-Kuna Irrigation District[3] it was argued that a contract entered into by the irrigation district violated art. 8 § 3 on the ground that the contract expenses would exceed the anticipated revenues. The Court did not reach the constitutional issue because it found that there was no showing that the expense required by the contract would exceed the irrigation district's revenues. The Court went on to state by way of dictum that an irrigation district is not a subdivision of the state as referred to in art. 8 § 3.

For the purposes of other constitutional provisions, irrigation districts have been held to be municipal corporations, or subdivisions of the state. Irrigation districts have been held to be municipal corporations for the purposes of art. 7 § 6 of the Idaho Constitution which provides that the state legislature shall not impose taxes for municipal corporations but allows the state to authorize municipal corporations to collect their own taxes.[4] It has also been held that irrigation districts are subject to art. 1 § 20 of the Idaho Constitution which provides that there shall be no property qualifications for electors.[5]

In the case of Lewiston Orchards Irrigation District v. Gilmore,[6] this Court was similarly presented with the problem of determining the character of irrigation districts and reconciling conflicting authority. That case involved the question of whether land acquired by an irrigation district for failure to pay assessments was exempt from state taxation under art. 7 § 4 of the Idaho Constitution. It was held that irrigation districts are not municipal corporations for the purpose of exemption from state taxation. The court characterized irrigation districts as follows,

"We have carefully analyzed and compared the foregoing authorities and others to similar effect, and have reached therefrom the conclusion that an irrigation district is a public corporation having such incidental municipal powers as are necessary to its internal management and the proper conduct of its business. Its primary purpose is the acquisition and operation of an irrigation system as a business enterprise for the benefit of land owners within the district, such property being held in trust for them in a proprietary capacity, while secondarily and incidentally certain municipal powers have been conferred for its government and regulation, and, when this is borne in mind, any seeming confusion in or conflict with the authorities holding

3. 75 Idaho 133, 269 P.2d 755 (1954).

4. Oregon Shortline R.R. v. Pioneer Irrigation District, 16 Idaho 578, 102 P. 904 (1909); Gem Irrigation District v. Van Deusen, 31 Idaho 779, 176 P. 887 (1918).

5. Ferbrache v. Drainage District No. 5, 23 Idaho 85, 128 P. 553 (1912); Pioneer Irrigation District v. Walker, 20 Idaho 605, 119 P. 304 (1911).

6. 53 Idaho 377, 23 P.2d 720 (1933).

**218**

that an irrigation district is a municipal or *quasi*-municipal corporation within the meaning of certain statutes and constitutional provisions disappear." [7]

■ The four enumerated entities that are subject to art. 8 § 3 are counties, cities, boards of education and schol districts. The characteristics of the four enumerated entities must be compared with the characteristics of irrigation districts to determine if it was intended that irrigation districts be subject to the limitations of art. 8 § 3. The four enumerated entities possess general governmental powers in the sense that their regulations and taxation apply to all persons located within their geographical boundaries. Irrigation districts are organized for the benefit of water users only, and they raise funds to finance their operations through assessments of water users. The assessments are levied on the basis of benefits received by the land.[8] The benefit assessments imposed by irrigation districts are similar to special assessments for improvement purposes which have been held not to be a tax within the uniformity requirements of the Idaho Constitution.[9]

Moreover, art. 8 § 3 requires,

"[P]rovisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal . . ."

Since art. 8 § 3 speaks in terms of taxes and since benefit assessments are not taxes, art. 8 § 3 applies to general governmental entities, not entities such as irrigation districts which derive their funds from benefit assessments.

The limitation on indebtedness of art. 8 § 3 applies to the revenue raising procedures of specified governmental entities. A comparison of the revenue raising procedures of counties, cities, boards of education and school districts with irrigation

districts reveals that irrigation districts are in essence corporations organized by persons for their own direct benefit, and who finance the corporation by payment in proportion to the benefits received. The entities enumerated in art. 8 § 3 are clearly different from irrigation districts and it is hereby concluded that art. 8 § 3 does not apply to irrigation districts.

The alternative writ of mandate shall be permanent.

SHEPARD, C. J., and DONALDSON, McFADDEN and BAKES, JJ., concur..

ON DENIAL OF REHEARING

The opinion of this Court that the American Falls Reservoir District was not a governmental entity is dispositive of the issues presented by the petition for rehearing concerning applicability of other constitutional provisions.

---

7. *Id.*, at 382, 23 P.2d at 722.

8. I.C. §§ 43–404 & 43–701.

9. Bosworth v. Anderson, 47 Idaho 697, 280 P. 227 (1929); Booth v. Groves, 43 Idaho 703, 255 P. 638 (1927).