548 P.2d 80

**James E. and Martha BRIZENDINE, husband and wife, et al., Plaintiffs-Respondents and Cross-Appellants,**

**v.**

**NAMPA MERIDIAN IRRIGATION DISTRICT, Defendant-Appellant and Cross-Respondent.**

**No. 11742.**

Supreme Court of Idaho.

March 26, 1976.

Rehearings Denied April 15, 22, 1976.

Craig L. Meadows and Gary Dean Babbitt, of Hawley, Troxell, Ennis & Hawley, William F. Ringert, of Anderson, Kaufman, Anderson & Ringert, Boise, for appellant.

John A. Rosholt, of Parry, Robertson, Daly & Larson, Twin Falls, amicus curiae.

Peter E. Heiser, Jr., of Kidwell & Heiser, Boise, for appellee.

McFADDEN, Justice.

James E. and Martha Brizendine and thirty-seven other parties (hereinafter

plaintiffs) instituted this action against the Nampa-Meridian Irrigation District (hereinafter irrigation district), seeking damages for injury to property when the district's irrigation canal bank broke flooding properties of the plaintiffs. After a court trial, the district court held the irrigation district liable in tort for its negligence. Subsequent to the trial, the irrigation district moved to dismiss the plaintiffs' claims for general damages and attorneys' fees on the grounds that the claims failed to state a claim upon which relief could be granted. The district court denied the motion except as to the claim of James E. Baldwin; it found that Baldwin had not complied with the notice provision of the Idaho Tort Claims Act (I.C. § 6–905) and dismissed Baldwin's claim. The irrigation district appealed and the plaintiffs cross appealed. We affirm as to the finding of liability of the irrigation district and reverse as to the dismissal of Baldwin's claim.

The Nampa-Meridian Irrigation District, organized under Title 43 of the Idaho Code, owns and maintains the Ridenbaugh Canal to convey irrigation water from the Boise River to farmlands in Ada and Canyon counties. Water in the canal flows generally east to west. The canal was constructed some time prior to 1890 as a deed conveying the canal was dated September 9, 1890.

On May 26, 1973, at a point near the Gekeler Lane bridge in the vicinity of southeast Boise, a portion of the north canal bank broke, allowing the impounded water to flow upon the plaintiffs' properties. At the location of the break, the canal was constructed with a raised embankment; that is, the canal banks and the water level are higher than the surrounding land. According to scale drawing of the canal introduced into evidence, the canal is approximately fifty-four feet wide with a depth of nine feet at the point of the break. On the north bank, the surrounding land is approximately seven feet below the top of the bank and on the south bank the surrounding land is approximately eight feet below the top of the bank. On the

day of the break, the canal carried 27,500 miner's inches of water which was its usual capacity; at this flow, the water level of the canal is about eight inches below the top of the canal bank at the point where the district's superintendent usually observed the flow.

In their complaint, the plaintiffs alleged that the break had been caused by the irrigation district's negligence and sought general and special damages and attorneys' fees. The irrigation district answered generally denying the allegations of the complaint. The parties stipulated to a bifurcated trial on the issues of liability and damages. The district court found the irrigation district liable after a court trial on the issue of liability. The court found that "[t]he exact reason for a break in the canal is not known and cannot be determined since evidence of the causative factors was destroyed by the break itself". The court ruled that the doctrine of res ipsa loquitur was applicable and that the irrigation district was negligent in failing to properly maintain the canal. It also ruled that the defendant was not liable under a theory of absolute liability (*Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868)) or strict liability in tort (Restatement [Second] of Torts § 402A).

Both parties have appealed. We will first consider the issues raised by the irrigation district's appeal. The irrigation district maintains that the district court erred by applying the doctrine of res ipsa loquitur to the case at bar and by ruling that the irrigation district was negligent by failing to properly maintain the canal.

I.C. § 42–1204 provides as follows:

"Prevention of damage to others.— *The owners or constructors of ditches, canals, works or other aqueducts,* and their successors in interest, using and employing the same to convey the waters of any stream or spring, whether the said ditches, canals, works or aqueducts be upon the lands owned or claimed by them, or upon other lands, *must carefully keep and maintain the same, and the embankments, flumes or other conduits,* by which such waters are or may be con-

ducted, in good repair and condition, *so as not to damage or in any way injure the property or premises of others."* (Emphasis added.)

The foregoing section has been construed to the effect that an irrigation district, as owner of a canal, would be liable for any damage caused by its negligence in the maintenance of the canal. *Smith v. Big Lost River Irrig. Dist.,* 83 Idaho 374, 364 P.2d 146 (1961). No issue is before this court concerning the item of damages occasioned by the canal break, and the district does not argue that the plaintiffs' alleged damages were not causally related to its alleged acts or omissions; thus, the sole issue before this court on the district's appeal concerns the district's liability in negligence.

◼ The elements of a cause of action based upon negligence can be summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. Prosser, "Law of Torts" § 30 (4th ed. 1971). In its holding, the trial court reasoned that there was an inference of negligence created under the doctrine of res ipsa loquitur sufficient to establish liability to the district on the basis of negligence. Res ipsa loquitur, if the doctrine is applicable to the facts of a particular case, creates an inference of a breach of a duty by a defendant.

"Res ipsa loquitur leads only to the conclusion that the defendant has not exercised reasonable care, and is not in itself any proof that he was under a duty to do so." Prosser, Law of Torts, § 39, p. 226 (4th ed. 1971).

See *Harper v. Hoffman,* 95 Idaho 933, 523 P.2d 536 (1974).

Res ipsa loquitur replaces direct evidence of negligence with a permissive inference of negligence.

" ' * * * The burdens of proof of the parties remain the same—the plaintiff,

with the aid of the inference, must prove his case by a preponderance of the evidence; if the plaintiff presents sufficient evidence to get to the jury, the defendant is obligated to produce evidence to explain or rebut plaintiff's prima facie case. If he fails to do so, he will in most instances suffer a verdict against him. In all cases, however, the preponderance of the plaintiff's evidence is a question for the trier of facts.' (Citations omitted)." *Harper v. Hoffman,* 95 Idaho 933, 934–35, 523 P.2d 536, 537–38 (1974), quoting *Skaggs Drug Centers Inc v. City of Idaho Falls,* 90 Idaho 1, 8, 407 P.2d 695, 698 (1965).

◼ The doctrine of res ipsa loquitur is applicable when two elements co-exist: (1) the agency or instrumentality causing the injury was under the exclusive control and management of the defendant; and (2) the circumstances were such that common knowledge and experience would justify the inference that the accident would not have ordinarily happened in the absence of negligence. *Harper v. Hoffman, supra.* The district court, in its conclusions of law, found that "[t]he agency or instrumentality causing the injury was under the exclusive control and management" of the irrigation district. The irrigation district has not assigned as error this conclusion. However, the irrigation district vigorously argues that this canal break is such an accident which may have occurred in the absence of negligence.

Application of the doctrine of res ipsa loquitur to a cause of action arising from a canal break is a question of first impression for this jurisdiction. However, this court has considered the question of an irrigation district's liability in negligence for seepage, overflow, or the breakage of a canal bank on several occasions and a review of the leading cases is appropriate. In *Harris v. Preston-Whitney Irrig. Co.,* 92 Idaho 398, 443 P.2d 482 (1968), this court upheld the findings of the district court that the defendant irrigation company had negligently failed to "chain clean" and impact its canal banks and that, as a result,

water seeped through the canal bank, flooding the plaintiffs' basement. This court affirmed an award of damages for injury to property arising from an overflow of water from the defendant irrigation district's lateral ditch in *Casey v. Nampa and Meridian Irrig. Dist.*, 85 Idaho 299, 379 P.2d 409 (1963). Therein, this court found that "the record discloses ample evidence from which the jury could have found negligence on the part of the defendant district in allowing moss to accumulate and failing to maintain the banks causing the canal to overflow". 85 Idaho 302, 379 P.2d 410.

In *Johnson v. Burley Irrig. Dist.*, 78 Idaho 392, 304 P.2d 912 (1956), this court affirmed a jury verdict finding the defendant irrigation district liable in negligence for flooding caused by a break in a lateral ditch:

"The foregoing facts, though disputed in some instances, justified a finding by the jury either, that the water in some considerable quantity, more than the lateral could carry safely, was emptied into the lateral * * * which caused the banks of the lateral to overflow and break; or, that seepage through a gopher hole, enlarged to a stream sufficient to break the bank of the lateral [caused the flooding] * * *.

"Either situation aforesaid would justify a finding by the jury of negligence on appellant's [the irrigation district's] part in maintaining the lateral." 78 Idaho 397, 304 P.2d 915.

In *Albrethson v. Carey Valley Reservoir Co.*, this court upheld a jury verdict finding a reservoir company liable in negligence for seepage from a lateral which injured the plaintiff's property on the basis of an expert witness's testimony that "the ditch was negligently maintained in that the action of the water had scoured out the impervious silt or sediment from the bottom and sides of the canal and the water was escaping through the rock and gravel and porous lava * * *." *Albrethson v. Carey Valley Reservoir Co.*, 67 Idaho 529,

535, 186 P.2d 853, 857 (1947). Other cases wherein this court has discussed the liability in negligence of one who diverts water from its natural course include *Smith v. Big Lost River Irrig. Dist.*, 83 Idaho 374, 364 P.2d 146 (1961); *Stephenson v. Pioneer Irrig. Dist.*, 49 Idaho 189, 288 P. 421 (1930); *Munn v. Twin Falls Canal Co.*, 43 Idaho 198, 252 P. 865 (1926); *Stuart v. Noble Ditch Co.*, 9 Idaho 765, 76 P. 255 (1904); *Wilson v. Boise City*, 6 Idaho 391, 55 P. 887 (1899); *Arave v. Idaho Canal Co.*, 5 Idaho 68, 46 P. 1024 (1896).

Other courts have held the doctrine of res ipsa loquitur applicable in a case such as this where impounded waters have escaped. *Clark v. Icicle Irrig. Dist.*, 72 Wash.2d 201, 432 P.2d 541 (1967, broken irrigation canal); *George Foltis, Inc. v. City of New York*, 287 N.Y. 108, 38 N.E. 2d 455 (1941, broken water main); *Willie v. Minnesota Power and Light Co.*, 190 Minn. 95, 250 N.W. 809 (1933, broken dam); *Winans v. Northern States Power Co.*, 158 Minn. 62, 196 N.W. 811 (1924, broken dam); *East Liverpool City Ice Co. v. Mattern*, 101 Ohio St. 62, 127 N.E. 408 (Ohio 1920, broken dam); *Barnum v. Handschiegel*, 103 Neb. 594, 173 N.W. 593 (1919, broken dam); *Dalton v. Selah Water Users' Ass'n*, 67 Wash. 589, 122 P. 4 (1912, broken irrigation canal); *Weaver Mercantile Co. v. Thurmond*, 68 W.Va. 530, 70 S.E. 126 (1911, broken water tank); *Barnard v. Fergus Falls*, 115 Minn. 506, 132 N.W. 998 (1911, broken dam); *City Water Power Co. v. Fergus Falls*, 113 Minn. 33, 128 N.W. 817 (1910, broken dam); *Union Pac. R. R. Co. v. Vale, Ore. Irrig. Dist.*, 253 F.Supp. 251 (D.Or.1966, broken irrigation canal). See, *United States v. Ure*, 225 F.2d 709 (9th Cir. 1955, broken irrigation canal), wherein that court ruled "we have considered the applicability of res ipsa loquitur and are of opinion that the evidence introduced by the government rebutted all inferences which could properly have been draw under that doctrine". 225 F.2d 712.

Other courts have refused to apply the doctrine. *Farmers Union Oil Co. v. Anderson,* 129 Mont. 580, 291 P.2d 604 (1956, broken dam, wherein the court held the doctrine not to be applicable under the circumstances of the case at bar); *Tenny v. The Miners' Ditch Co.,* 7 Cal. 335 (Cal. 1857, broken ditch); *Freed v. Inland Empire Ins. Co.,* 154 F.Supp. 855 (D.Utah 1957, broken irrigation canal).

The basis upon which the trier of fact determines whether the accident would not have ordinarily happened in the absence of negligence is that of common knowledge and experience. *Harper v. Hoffman,* 95 Idaho 933, 523 P.2d 536 (1974). However, in cases "where common knowledge alone may not be sufficient to enable a layman to say the accident is of a kind which ordinarily does not occur in the absence of negligence," expert testimony may be admissible. *Walker v. Distler,* 78 Idaho 38, 47, 296 P.2d 452, 458 (1956). In such cases, expert testimony may give a foundation for the trier of fact to reasonably conclude that the accident would not have ordinarily occurred in the absence of negligence. *Hale v. Heninger,* 87 Idaho 414, 393 P.2d 718 (1964); *Walker v. Distler, supra.* Prosser, Law of Torts, § 39 (4th ed. 1971).

An engineer, testifying as an expert witness on behalf of the plaintiffs, concluded that the break may have been caused by a combination of circumstances including water traveling through a permeable lense of sand and gravel, a gopher hole or other zone of weakness. Another expert witness, an engineer called by the plaintiffs, testified that he thought the break was caused by a combination of factors—inadequate design, poor construction procedures, the possibility of gopher holes penetrating part way through the embankment, and a piping phenomenon.[1] An engineer, testifying as an expert witness for the irrigation district, agreed with the latter mentioned plaintiffs' expert as to the causes of the break.[2] Another expert witness, called by the irrigation district, testified that he thought the canal break was caused by a burrowing rodent.

Upon this record, the trier of fact, reasoning from his common experience in light of the expert testimony, concluded that this canal would not have broken in the absence of negligence. This conclusion is consistent with opinions of this court wherein we have found the doctrine of res ipsa loquitur to be applicable to cases arising from a broken underground water main. *Skaggs Drug Centers, Inc. v. City of Idaho Falls,* 90 Idaho 1, 407 P.2d 695 (1965); *C. C. Anderson Stores Co. v. Boise Water Corp.,* 84 Idaho 355, 372 P.2d 752 (1962). We find no reason to distinguish between these two cases and the case at bar in regard to the doctrine.

Application of the doctrine creates an inference of negligence; the weight to be attached to that inference is a question of fact for the trier of fact. *Skaggs Drug Centers, Inc. v. City of Idaho Falls,* 90 Idaho 1, 407 P.2d 695 (1965). On appeal, questions of fact will be viewed most favorable to the respondents. *May v. Triangle Oil Co., Inc.,* 96 Idaho 289, 527 P.2d 781 (1974). The district court, inferring negligence on the part of the irrigation district, found that the district had breached its duty to carefully maintain the

---

1. "Piping" as explained by the plaintiff's witness occurs when water passes through soil with sufficient velocity to erode the very fine soil particles. Erosion of these particles allows the water to pass more freely; as the erosion increases, the permeability of the soil increases, which, in turn, increases the velocity of the water passing through, which in turn increases the erosion. The witness related the piping phenomenon to poor design and construction techniques whereby permeable soils were used to construct the banks.

2. "Q Do you have any opinions why it broke?
A I think I would kind of go along with Mr. Jones's testimony. I believe it was probably a combination of circumstances that went together of one kind or another."

canal. Upon reviewing the record, we find that there is substantial and competent, although conflicting, evidence to support the finding. See, *Ellis v. Jones*, 96 Idaho 90, 524 P.2d 1062 (1974) per curiam.

The irrigation district asserts that notice to the district of the defect causing the canal break must be shown before the doctrine of res ipsa loquitur becomes applicable. Such a conclusion is in conflict with the reasoning of this court in *C. C. Anderson Stores Co. v. Boise Water Corp.*, 84 Idaho 355, 372 P.2d 752 (1962). In that case, involving the application of the doctrine of res ipsa loquitur to a case arising from a broken water main, this court rejected the argument that the defendant city needed to have had actual notice of the defect causing the injury before liability could be imposed: "[t]he only requirement as to notice is such as is compatible with the application of the doctrine, namely, defendant is bound to take notice that its mains will deteriorate from time and use". 84 Idaho 355, 362, 372 P.2d 752, 756. Such reasoning is applicable to the facts of this case.

■ The irrigation district also argues that the district court erred by applying the doctrine of negligence per se to the case at bar. This argument is based upon the following conclusion of law entered by the district court.

"By virtue of the inference of negligence and by virtue of the break in the canal embankment itself, defendant violated the provisions of Sec. 42-1204, I. C."

I.C. § 42-1204, *supra*, provides that an irrigation district "must carefully keep and maintain * * * [its canals] in good repair and condition, so as not to damage or in any way injure the property or premises of others." For the reasons to be discussed, we find that this conclusion of law does not involve an application of the doctrine of negligence per se.

■ A standard of conduct may be defined by legislation or administrative regulation. Prosser, Law of Torts, § 36 (4th ed. 1971). A court may adopt "as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation * * *". Restatement (Second) Torts § 286 (1965). Proof of a violation of a statute which defines a standard of conduct may establish negligence per se. That is, proof of an unexcused violation of a statute, if the statute is designed to protect the plaintiff's class against the harm incurred, is conclusive on the issue of negligence. Prosser, § 36, *supra*. However, I.C. § 42-1204 defines the duty owed by an irrigation district, nor the standard of care by which the trier of fact determines whether the defendant has breached his duty.

Prosser has analyzed the concept of duty as it arises in negligence:

"It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a queston of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other." Prosser, Law of Torts, § 53, p. 324 (4th ed. 1971).

I.C. § 42-1204 imposes a duty to "carefully keep and maintain [canal banks] in good repair and condition"; the statute does not define a standard of care by which the trier of fact may determine whether a defendant has failed to "carefully keep and repair" its canal banks.

Moreover, the district court, in its findings of fact and conclusions of law, did not refer to the concept of "negligence per

se". The two references to I.C. § 42–1204 by the district court are in the context of the irrigation district's duty and not in the context of a standard of care.

The judgment finding the irrigation district liable in negligence for damages to the plaintiffs' properties proximately caused by the canal break is affirmed.

### Cross Appeal

The plaintiffs, in their cross appeal, assigned as error the district court's failure to find the irrigation district absolutely liable under *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868), or strictly liable under Restatement (Second) Torts § 402A, and the district court's failure to find certain acts or omissions of the irrigation district to be negligent. Because we have affirmed the district court's finding of liability based on negligence, we will not consider these assignments of error.

The plaintiffs also assigned as error the district court's ruling dismissing the claim of James E. Baldwin. After trial, the irrigation district moved to dismiss the plaintiffs' claims for general damages and attorneys' fees on the grounds that the claims failed to state a claim upon which relief could be granted. The district court denied the motion except as to Baldwin's claim; the court found that Baldwin did not file a notice of claim with the irrigation district within the 120 day period as required by I.C. § 6–906, and so denied his claim.[3]

The plaintiffs have assigned error to this ruling and argue that the Idaho Tort Claims Act, I.C. § 6–901 et seq., is not applicable to an irrigation district as a district is not a municipal or public corporation within the purview of this act.

Under the Idaho Tort Claims Act, "every governmental entity is subject to liability for its torts" except as otherwise provided in the act. I.C. § 6–903. "Govern-mental entity" is defined as "the state and political subdivisions as herein defined". I.C. § 6–902(3). " 'Political subdivision' means any county, city, municipal corporation, school district, special improvement or taxing district, or any other political subdivision or publc (sic) corporation." I.C. § 6–902(2).

In past decisions, this court has termed an irrigation district a "quasi-municipal" corporation or a "quasi-public" corporation. *Hale v. McCammon Ditch Co.*, 72 Idaho 478, 244 P.2d 151 (1951). *Tingwall v. King Hill Irrig. Dist.*, 66 Idaho 76, 155 P.2d 605 (1945); *Stephenson v. Pioneer Irrig. Dist.*, 49 Idaho 189, 288 P. 421 (1930). See, *Barker v. Wagner*, 96 Idaho 214, 526 P.2d 174 (1974). Thus, the question before us is whether an irrigation district, which has been described as a quasi-municipal or a quasi-public corporation, is a municipal or public corporation for the purposes of the Idaho Tort Claims Act.

 We think not. An essential element of a municipal or public corporation is a corporate purpose deemed to be for the welfare of the general public—"a public corporation is one that is created for political purposes with political powers to be exercised for purposes connected with the public good in the administration of civil government." *Fletcher, Cyc Corp* § 58 p. 292 (Perm. ed. 1974). However, an irrigation district's primary purpose is the acquisition and operation of an irrigation system as a business enterprise for the benefit of its shareholders. *Barker v. Wagner*, 96 Idaho 214, 526 P.2d 174 (1974); *Lewiston Orchards Irrig. Dist. v. Gilmore*, 53 Idaho 377, 23 P.2d 720 (1933). See, *Eldridge v. Black Canyon Irrig. Dist.*, 55 Idaho 443, 43 P.2d 1052 (1935); *Stephenson v. Pioneer Irrig. Dist.*, 49 Idaho 189, 288 P. 421 (1930); I.C. §§ 43–101, 43–304, 43–404, 43–701.

---

3. The plaintiffs submitted an affidavit by Baldwin in opposition to the motion; the district court treated the portion of the motion as to Baldwin's claim as a motion for summary judgment. I.R.C.P. 12(b), 56; *Cook v. Soltman*, 96 Idaho 187, 525 P.2d 969 (1974).

▇ Moreover, the legislature specifically included school districts, special improvement or taxing districts, and agencies, authorities, commissions, boards, institutions, hospitals, colleges or universities of the state within the act. I.C. § 6–902(1)(2). As the legislature has enumerated both generic categories (instrumentality of the state, municipal corporation, public corporations, etc.) and specific entities and irrigation districts are not included in either, the legislature must have intended not to include irrigation districts within the act.

The judgment is affirmed as to a finding of negligence on the part of the Nampa-Meridian Irrigation District and judgment reversed as to dismissal of the claim of James E. Baldwin. Case remanded for proceedings consistent with this opinion. Costs to plaintiffs-respondents, cross-appellants.

McQUADE, C. J., and DONALDSON and BAKES, JJ., concur.

McQUADE, C. J., registered his concurrence prior to his resignation.

SHEPARD, Justice (concurring in part and dissenting in part).

I concur with the majority in affirming that the appellant irrigation district is liable for damages proximately caused to plaintiff's properties by its negligence. However, for the reasons stated below I am in agreement with the ruling of the trial court that cross-appellant James Baldwin is barred from recovery by the Idaho Tort Claims Act (hereinafter Act), and therefore dissent.

I.C. § 6–906 pertaining to tort claims against "Political subdivisions" specifically requires that all claims must be presented and filed with the clerk or secretary of the subdivision within 120 days from the date the claim arose or reasonably should have been discovered. The trial court found that Baldwin had failed to provide notice of his claim within this time period and thus dismissed his action. At issue here is whether an irrigation district, properly organized under the laws of this state, I.C. § 43–101 et seq., is a "political subdivision" within the meaning of I.C. § 6–906.

I.C. § 6–902(2) states:

"As used in this act: * * * 'Political subdivision' means any county, city, municipal corporation, school district, special improvement or taxing district, or any other political subdivision or public corporation."

According to the majority an irrigation district does not fall within this definition, apparently for three reasons: (1) because it has not been characterized as a municipal or public corporation by prior decisions of this Court; (2) because a "public corporation" is distinguished by the exercise of its powers for the public good and an irrigation district benefits only its shareholders; and (3) because the legislature, in failing to specifically identify irrigation districts among the enumerated generic categories of I.C. § 6–902(1)(2), must have intended its exclusion.

The majority is correct in its statement that prior opinions have termed irrigation districts as "quasi-municipal corporations," *Tingwall v. King Hill Irr. Dist.*, 66 Idaho 76, 155 P.2d 605 (1945); *Pioneer Irr. Dist. v. Walker*, 20 Idaho 605, 119 P. 304 (1911); *Colburn v. Wilson*, 23 Idaho 337, 130 P. 381 (1913); *Indian Cove Irr. Dist. v. Prideaux*, 25 Idaho 112, 136 P. 618 (1913); and as "quasi-public corporations," *Hale v. McCammon Ditch Co.*, 72 Idaho 478, 244 P.2d 151 (1951); *Stephenson v. Pioneer Irr. Dist.*, 49 Idaho 189, 288 P. 421 (1930); *Little Willow Irr. Dist. v. Haynes*, 24 Idaho 317, 133 P. 905 (1905); *Yaden v. Gem Irr. Dist.*, 37 Idaho 300, 216 P. 250 (1923). It is also the case, however, that this Court has in numerous prior opinions characterized irrigation districts as "public corporations." *Indian Cove Irr. Dist. v. Prideaux, supra*; *Nampa & Meridian Irr. Dist. v. Briggs*, 27 Idaho 84, 147 P. 75 (1915); *Lewiston Orchards Irr. Dist. v. Gilmore*, 53 Idaho 377, 23 P.2d 720 (1933); and as "municipal corporations," *Oregon*

*Short Line R. Co. v. Pioneer Irr. Dist.*, 16 Idaho 578, 102 P. 904 (1909); *Gem Irr. Dist. v. VanDeusen,* 31 Idaho 779, 176 P. 887 (1918); *Yaden v. Gem Irr. Dist., supra; Storey & Fawcett v. Nampa & Meridian Irr. Dist.,* 32 Idaho 713, 187 P. 946 (1920). In addition, they have been called "quasi-corporations, public in nature." *Chandler v. Drainage Dist. No. 2,* 68 Idaho 42, 187 P.2d 971 (1947), "not a public service corporation" but a "mutual cooperative corporation," *Indian Cove Irr. Dist. v. Briggs, supra;* and "public quasi-corporations," *Strickfaden v. Greencreek Hwy. Dist.,* 42 Idaho 738, 248 P. 456 (1926); *City of Nampa v. Nampa & Meridian Irr. Dist.,* 19 Idaho 779, 115 P. 979 (1911).

Rather obviously, this diversity of opinion provides little assistance in resolving the issue before us. One could, of course, choose from among the above description that which we deem most appropriate. Such, however, would misrepresent the duty of court which, as I see it, is to glean the legislative intent from the provisions of the statute. Since the Act expressly enumerates several entities subject to its provisions, we gain some insight by comparing the characteristics of an irrigation district with those of the enumerated entities. See *Barker v. Wagner,* 96 Idaho 214, 526 P.2d 174 (1974).

Foremost among those enumerated is the category of "public corporations." It is the majority's opinion that the dispositive element is whether the appellant's purpose can be said to be "for the welfare of the general public," which it deems to be the essential characteristic of a public corporation. I do not agree that the demarcation between public and private entities turns upon this purpose. Even assuming the appropriateness of the standard, I question its application by the majority here.

While it is true that irrigation districts are designed to serve a specific purpose for a limited clientele, it does not necessarily follow that such service is beyond the scope of the public welfare in general.

An irrigation district is a non-profit enterprise, albeit a business, serving a finite geographic area within which all landowners are both potentially benefited by its services and subject to its assessments. In this respect it is no different than a highway district, school district or even a municipality or county insofar as it has limited powers generally applicable within geographic boundaries. In addition, I.C. § 43–304 expressly provides that "[t]he use of all water required for the irrigation of the lands of any district * * * is hereby declared to be a public use." I.C. § 43–908 grants to irrigation districts the power of eminent domain, a power usually granted only to "public" entities. However limited the purpose of an irrigation district, it is a purpose which in my opinion is conducive to the general welfare and analogous to that served by any other public corporation. See *Chandler v. Drainage Dist. No. 2, supra.*

The majority cites in support of its conclusion on this issue *Barker v. Wagner, supra,* and *Lewiston Orchards Irr. Dist. v. Gilmore, supra,* wherein the primary purpose of an irrigation district is said to be the "operation of an irrigation system as a business enterprise." What the majority fails to note, however, is that despite this characterization, *Lewiston Orchards,* cited as controlling in *Barker,* specifically states that "an irrigation district is a public corporation." Thus, even by the majority's own standard, it would appear that irrigation districts are public corporations within the meaning of I.C. § 6–902(2).

In my opinion the better test for deciding what is and what is not a "public corporation" was stated by this Court in *Indian Cove Irr. Dist. v. Prideaux, supra.* Therein it was said:

"It is settled law that irrigation districts are public corporations although not strictly municipal in the sense of exercising governmental functions other than those connected with raising revenue to

defray the expense of constructing and operating irrigation systems and the conduct of business of the district. (citations omitted)

* * * * * *

"One of the essential attributes of a public corporation, as distinguished from a private corporation, is that membership in the former is involuntary and based upon some geographical or similar classification, while membership in the latter is based on consent. * * * It is clear that irrigation districts as public corporations are not based upon consent of all the members and may include lands without the consent of the owner entryman." 25 Idaho at 124, 136 P. at 621.

The continuing vitality of this standard is, in my judgment, apparent in the instant action and by it I would find the appellant irrigation district a public corporation subject to the limitations of the Tort Claims Act.

The fact that the legislature failed to specifically identify irrigation districts among those political subdivisions listed in I.C. § 6–902(2) is irrelevant. The proper rule of construction in this case is one *ejusdem generis* and not *expressio unius est exclusio alterius*. The statute clearly sets forth a residual category intended to include all other "public corporations" not enumerated. As the foregoing analysis indicates, it is my opinion that irrigation districts are indeed public corporations, in the statute and being of the same general nature and class as those things enumerated are intended to be included therein.

The definition of a "taxing district," which is enumerated by the statute as a "political subdivision," also includes irrigation districts. Idaho Code provisions pertaining to the powers of irrigation districts are replete with sections authorizing irrigation districts to levy and collect taxes. See I.C. §§ 43–315, 43–321, 43–328 through 334, 43–701 et seq. This Court has recognized irrigation districts as "municipal corporations" within the meaning of art. 7, § 6 of the Idaho Constitution for taxing purposes. *Oregon Short Line R. Co. v. Pioneer Irr. Dist., supra; Gem Irr. Dist. v. VanDeusen, supra*; and perhaps most importantly, the case of *Lister v. Riddle*, 50 Idaho 431, 296 P. 771 (1931) specifically declares a drainage district [a subdivision of an irrigation district, I.C. § 43–307] to be a "taxing district."

I am further persuaded in my conclusion that the Idaho Tort Claims Act applies to irrigation districts by a review of the history of the law of torts as it pertained to irrigation districts prior to passage of the Act. In *Eldridge v. Black Canyon Irr. Dist.*, 55 Idaho 443, 43 P.2d 1052 (1935) this Court held that an irrigation district is liable for its torts and those of its agents by the same rule of liability imposed upon a municipal corporation. See also, *Noon v. Gem Irr. Dist.*, 205 F. 402 (D.Idaho 1913). In so holding the court implicitly exempted irrigation districts, like municipalities, from the sovereign immunity defense then available in suits against the state. Since then, the legislature has not only authorized suits in tort against the state but has also brought within the limitations of its provisions municipalities and other like public corporations. I believe it thereby intended to embrace within those new rules all governmental entities previously regarded with parallel status by the tort laws of this state. In sum, I would find the appellant a public corporation and a taxing district within the intent of I.C. § 6–902(2), and therefore subject to the time limitations of I.C. §§ 6–906.